**TIME SHARE VACATION CLUB, Appellant,**

v.

**ATLANTIC RESORTS, LTD.**

and

**Coastal Marketing Associates, Inc.**

and

**Schuman, Martin L., Jr.**

No. 83–1576.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Feb. 28, 1984.
Decided May 24, 1984.
Rehearing and Rehearing En Banc
Denied July 9, 1984.

**62**

Timothy J. Savage, Philadelphia, Pa., for appellant.

---

\* Honorable Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The defendants filed no briefs in response to Time Share's appeal. The case was submitted under Third Circuit Rule 12(6) without oral argument.

Before SEITZ, Chief Judge, GARTH, Circuit Judge, and DIAMOND, District Judge\*.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal is taken by plaintiff Time Share Vacation Club ("Time Share") from the dismissal of Time Share's breach of contract action against defendants Atlantic Coast Resorts, Ltd. ("Atlantic"), Coastal Marketing Associates, Inc. ("Coastal") and Martin L. Schuman, Jr.[1] The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(2) for lack of in personam jurisdiction.[2] We affirm.

### I.

Time Share, a Pennsylvania corporation with principal offices in Philadelphia, alleged that it entered into a contract with defendants Atlantic and Coastal on July 24, 1982. Under this contract, Time Share was to attract potential customers to purchase vacation "interval time shares" at the development known as "Atlantic Resorts," located in Ocean Pines, Maryland. Atlantic, Coastal, and Schuman were all citizens of Maryland. The contract allegedly provided that Time Share would receive a commission on all sales made through its promotional efforts, and was to receive reimbursement for costs and labor. This agreement was apparently signed by Martin Schuman as President and controlling shareholder of both Atlantic and Coastal, and was executed in Maryland.

The complaint alleged that Atlantic and Coastal breached this agreement when they failed to reimburse Time Share for various expenses, totalling $74,000. Time Share also sought $252,000 in lost profits

2. Fed.R.Civ.P. 12(b) provides in relevant part that "[T]he following defenses may at the option of the pleader be made by motion. (1) ... (2) lack of jurisdiction over the person...."

and commissions.[3] The action was brought in the Eastern District of Pennsylvania, with jurisdiction based on diversity of citizenship.

In lieu of an answer, defendants filed a motion to dismiss for lack of in personam jurisdiction. Fed.R.Civ.P. 12(b)(2). The district court, without opinion, granted the motion and dismissed the action against all defendants. It is from this order that Time Share appeals.

## II.

The sole issue before us is whether Time Share has established that defendants had sufficient contact with the Commonwealth of Pennsylvania such that a court may properly exercise personal jurisdiction over them. Once a jurisdictional defense has been properly raised, "the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction." *Compagnie des Bauxites de Guinee v. L'Union,* 723 F.2d 357 (3d Cir.1983) (Seitz, C.J.).

### A.

Rule 4(e) of the Federal Rules of Civil Procedure permits a district court to assert personal jurisdiction over a nonresident to the extent allowed under the law of the state where the district court sits. In turn, the Pennsylvania Long Arm Statute, Pa. Stat.Ann. tit. 42, § 5322(b) (Purdon 1981) allows a court to exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." Thus, the reach of the Pennsylvania statute is coextensive with the due process clause of the United States Constitution.

Under the due process clause, a court may not exercise personal jurisdiction over a non-resident defendant unless there are certain minimum contacts between the defendant and the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Essentially, before hearing a case, a court must ask whether "the quality and nature of the *defendant's* activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state." *Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316–17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1940)).

In interpreting this constitutional standard, the Supreme Court has determined that, in order for a non-resident defendant to be subject to the jurisdiction of the court, it must have purposefully availed itself of the privilege of acting within the forum state. *World-Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566; *Hanson v. Denkla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Pennsylvania courts have also articulated the constitutional standards of due process as they are incorporated into the Pennsylvania statute. In *Proctor & Schwartz v. Cleveland Lumber Co.,* 228 Pa.Super. 12, 323 A.2d 11 (1974), the court developed a three step analysis to determine whether or not sufficient contacts are present for the exercise of jurisdiction. The court stated:

> First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws.... Second, the cause of action must arise from defendant's activities within the forum state.... Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable.

323 A.2d at 15.

### B.

In an attempt to satisfy the minimum contacts requirement, Time Share sub-

---

**3.** Time Share's complaint further contended that defendants have failed to pay for various customer and membership name lists at the agreed balance purchase price of $14,000, and that a check for $3,000 from Coastal signed by Schuman payable to Time Share was dishonored.

mitted an affidavit from its president alleging the following transactions by the defendants which took place within Pennsylvania and more particularly within the Eastern District of Pennsylvania:[4]

Paragraph 11 of the agreement between the parties provides the following, 'The parites [sic] agree that this Agreement and all aspects of the relationships among the parties shall be controlled and interpreted unders [sic] the laws of the Commonwealth of Pennsylvania.'

All sales and promotional materials were to be and were in fact developed and designed at TVC's Pennsylvania office. The prospective purchasers to whom the promotional program was aimed were from the Baltimore and Philadelphia metropolitan areas. TVC's efforts were primarily intended to attract people from those two areas.

As agent for the defendants, TVC brought people from Pennsylvania to the defendants' development for the purpose of selling them time share units. The defendants also sent a private airplane to Philadelphia for transporting people from TVC to the project in Maryland.

To attract persons from the metropolitan Philadelphia area, the defendants advertised the time share units in the *Philadelphia Inquirer.*

In reliance upon the contract between the parties, TVC invested substantial sums of money for material and expended a substantial amount of labor during the period from July through September, 1982 .... the labor and material as required by the contract and their refusal to permit TVC to perform the contract has resulted in economic harm to TVC, its principals, its shareholders and its employees. Those harmed by the defendants' actions were all residents of the Commonwealth of Pennsylvania. In addition, as a result of the defendants' actions, TVC has been unable to pay its creditors, most of whom are Pennsylvania residents.

On September 17, 1982, the defendants Coastal and Schuman executed and delivered to TVC a $3,000.00 check which was subsequently dishonored for lack of sufficient funds. The check was deposited in TVC's Pennsylvania bank account. As a result of the bad check, TVC's account suffered losses.

The affidavit which contained these averments represents the entirety of the evidence submitted by Time Share in support of the proposition that in personam jurisdiction properly lay against defendants.[5]

■ In examining whether Time Share has met its burden of proof, we must make some comment at the outset regarding the state of the record. Given that Time Share places central importance on its contract with Atlantic and Coastal in establishing the contacts of those defendants with Pennsylvania, one would have assumed that Time Share would have furnished a copy of that contract on which it relies for jurisdiction in the Eastern District. We have searched the appendix in vain for such a copy. *See* Fed.R.App.P. 30(a) ("The appellant shall prepare and file an appendix to the briefs which shall contain ... any other parts of the record to which the parties wish to direct the particular attention of the court"). Even more surprising, however, is the fact that the contract is likewise not to be found in the district court record. Indeed, all that we know about the contents of the contract comes from excerpts

---

**4.** Time Share did not identify the particular defendant or defendants responsible for each act alleged.

**5.** Defendants also submitted an affidavit by Martin Schuman which asserted, inter alia, that: (1) defendants had no employees, agents, or representatives in Pennsylvania; (2) defendants never applied to do business in Pennsylvania, nor are they certified or licensed to do so; (3) defendants pay no taxes in Pennsylvania; (4) defendants have no place of business in Pennsylvania; (5) none of the corporate officers reside in Pennsylvania; (6) no corporate officers have visited Pennsylvania for business purposes in the last several years; (7) defendants have no mailing addresses, real or personal property, or bank accounts in Pennsylvania.

Schuman's affidavit also alleged that the contract sued upon by Time Share was proposed, accepted, and executed in the State of Maryland.

which Time Share has chosen to reveal to the district court and to us through the affidavits of its president.

Since Time Share has the burden of proof in establishing jurisdictional facts, it also would bear the burden of producing a copy of the entire contract, or at the least, proffering an explanation for its absence. *See* Fed.R.Evid. 1002, 1003, 1004 (requiring original or duplicate of document unless lost or destroyed, or otherwise unavailable). This is particularly pertinent in this case, where Time Share has relied wholly upon the contract to establish minimum contacts of the defendants with Pennsylvania.

### C.

Even in the absence of the best evidence—the contract itself—we will examine the averments of Time Share's affidavit, although in doing so we do not suggest that Time Share will be relieved of its burden of producing the contract and of its consequent burden of proving sufficient contacts. Indeed, it is our conclusion that it has not met either burden.

■ As the Supreme Court has noted: The unilateral activity of *those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State* .... it is essential in each case that there be some act by which the *defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws. *Hanson v. Denkla,* 357 U.S. at 253, 78 S.Ct. at 1239. In this case, however, the bulk of Time Share's allegations consist merely of a recitation of unilateral activity on its part, which is insufficient to establish minimum contacts. The fact that Time Share itself prepared promotional material and solicited customers in Pennsylvania,

albeit in compliance with the terms of the contract with defendants, does not in any way show that the *defendants,* or any one of them, has performed acts for or by which it could reasonably expect to be haled into court in Pennsylvania.[6] We must examine what acts the *defendants,* or each of them, committed by which minimum contacts could be established.

■ Examined in this light, the record developed by Time Share does not establish voluntary acts by any defendant which are sufficient to create in personam jurisdiction. We first note that a Pennsylvania choice of law provision, although perhaps a factor in showing whether the defendants could foresee that their acts would have effects in Pennsylvania, would not itself be enough to vest jurisdiction. *McShan v. Omega Lonis Brandt Et Frere,* 536 F.2d 516, 518 (2d Cir.1976); *Baron & Co. v. Bank of New Jersey,* 497 F.Supp. 534, 548 (E.D.Pa.1980). *Cf. Proctor & Schwartz,* 323 A.2d at 15 (Pennsylvania choice of law provision, *coupled with other parts of contract,* established that defendants could foresee economic impact in Pennsylvania). A choice of law provision, by itself, is merely a shorthand incorporation into the contract of rules which, for the most part, could have been explicitly written into the agreement by the parties without reference to any particular state or its law. Such a clause, standing alone, does not create any economic impact within the state whose laws have been so chosen.

■ Furthermore, Time Share's allegation that "All sales and promotional materials were to be and were in fact developed and designed at TVC's Pennsylvania office" is no more than a conclusory statement which only restates an ultimate fact which Time Share must prove. What is required, however, is actual evidence that, by entering into the contract, the particular defendant could foresee impact within

---

**6.** *In Baron & Co. v. Bank of New Jersey,* 497 F.Supp. 534 (E.D.Pa.1980), which involved analogous facts, the court found that the defendant did not purposefully avail itself of the privilege of acting within Pennsylvania merely by executing a contract (which contained a Pennsylvania choice of law provision) under which *plaintiff* conducted substantial activity within Pennsylvania.

Pennsylvania. We are not told whether the contract itself provided for Time Share's performance in Pennsylvania, or whether this was a unilateral perception on Time Share's part, or what evidentiary basis, if any, existed for the contention that any defendant could foresee economic impact in the forum state as a result of his or its transactions with Time Share. Time Share's bald, self-serving statement that such materials "were to be ... developed and designed ... at TVC's [Time Share's] Pennsylvania office" is simply insufficient to prove by a preponderance of the evidence that, by entering into the contract, any of the defendants could foresee economic impact in the Commonwealth of Pennsylvania.[7]

■■■ The only direct actions which Time Share alleges were taken by defendants (without identification as to which one) within Pennsylvania were the sending of an airplane to bring potential customers to Maryland, and the placement of an advertisement promoting Atlantic Resorts in *The Philadelphia Inquirer*.[8] Even if true, no part of Time Share's complaint alleges injuries stemming from those acts, and thus they would not satisfy the requirement that "the cause of action must arise from defendant's activities within the forum state." *Proctor & Schwartz*, 323 A.2d at 15 (based upon Pennsylvania statute incorporating constitutional standard). As the Supreme Court has recently noted, unless a defendant has "continuous and systematic general business contacts" with the forum state, the cause of action must arise from those activities within the state which would give rise to personal jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* — U.S. ——, ——, 104 S.Ct. 1868, 1871–1874, 80 L.Ed.2d 404 (1984). Time Share has not shown, nor even alleged, that the contacts of any of the defendants were so continuous or systematic that they fall within this prescription.

### D.

■■■ Unlike summary judgment proceedings, in which a party need only submit affidavits which make out disputes of material fact, in establishing in personam jurisdiction, Time Share had a burden of proof to sustain, and thus mere affidavits which parrot and do no more than restate plaintiff's allegations without identification of particular defendants and without factual content do not end the inquiry. Here, we find that Time Share's affidavit simply failed to prove any defendant's contacts with the forum state. It is therefore unnecessary for us to speculate on the result had Time Share's allegations been more fully substantiated on the record.[9]

---

**7.** Neither do we believe that the mere issuance of a check which finds its way to a Pennsylvania bank provides the requisite foreseeability of economic impact in Pennsylvania. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* —— U.S. ——, ——, 104 S.Ct. 1868, 1873–1874, 80 L.Ed.2d 404 (1984). *Cf. Froning & Deppe, Inc. v. Continental Illinois Nat'l Bank & Trust Co.,* 695 F.2d 289 (7th Cir.1982) (by accepting checks drawn on banks located in forum state, out of state bank did not consciously enjoy benefits of forum state's laws).

Moreover, even if the issuance of a check could provide personal jurisdiction, at best such jurisdiction would extend only to the cause of action for payment on the instrument, and would not bring on its coat tails the counts for breach of contract. Standing alone, of course, the action for payment of the $3,000 check would not satisfy the amount in controversy requirement of diversity jurisdiction.

**8.** We are not told how many times this advertisement was run, nor whether Time Share had any role in its publication, or whether any part of Time Share's cause of action derives from the advertisement. *See Reliance Steel Prod. Co. v. Watson, Ess, Marshall & Enngas,* 675 F.2d 587 (3d Cir.1982) (advertisement seeking business in another state does not alone provide minimum contacts with state of publication).

**9.** Because we conclude that no in personam jurisdiction exists against any defendants, we need not consider any distinctions which might be made among Atlantic, Coastal, and in particular, Schuman, who was sued personally for actions undertaken as a corporate officer.

The dissent also likens the motion made here by the defendants under Fed.R.Civ.P. 12(b)(2) to a motion under Rule 12(b)(6) (failure to state a claim). In doing so, the dissent would require us to accept as true all of the allegations of the non-moving party. There is a significant procedural distinction, however, between these two kinds of motions.

### III.

The judgment of the district court dismissing this action for lack of in personam jurisdiction will be affirmed.

SEITZ, Chief Judge, dissenting.

I find myself unable to agree with the majority opinion, based on my understanding of Pennsylvania law. I read the majority opinion as holding that the allegations contained in the plaintiff's affidavit were insufficient, as a matter of law, to show the defendants' amenability to suit in Pennsylvania. Federal Rule of Civil Procedure 4(e) provides that the sufficiency of the affidavit is a matter of Pennsylvania law. Pennsylvania courts test the existence of minimum contacts sufficient for exercise of long-arm jurisdiction under the three-part test set out in *Proctor & Schwartz v. Cleveland Lumber Co.*, 323 A.2d 11 (Pa.Super.1974). My reading of Pennsylvania cases leads me to conclude that the plaintiff's affidavit was sufficient under the *Proctor & Schwartz* test to make a prima facie showing of minimum contacts.

The first part of the *Proctor & Schwartz* test looks to whether the defendants "purposefully availed" themselves of the privilege of acting within Pennsylvania. This part of the test is satisfied where the parties enter into a contract which will be performed in Pennsylvania. *Kingsley & Keith (Canada) Ltd. v. Mercer International Corp.*, 291 Pa.Super. 96, 435 A.2d 585 (Pa.Super.1981); *aff'd by an equally divided court*, 500 Pa. 371, 456 A.2d 1333 (Pa.1983). This is no less true where the contract calls for the plaintiff rather than the defendant to perform in Pennsylvania. *Koenig v. International Brotherhood of Boilermakers*, 284 Pa.Super. 558, 426 A.2d 635 (Pa.Super.1980); *Proctor & Schwartz, supra.* The contract here called for plaintiff to solicit Pennsylvania purchasers for defendants' time shares, and thus required performance to take place in Pennsylvania.

The second part of the test looks to whether the cause of action arises from the defendants' activities within the forum state. This part of the test is met where the defendants breach a contract which is to be performed in Pennsylvania. "The activity which satisfies the 'purposefully availed' test above is the entering into [of] contractual obligations. The cause of action arises from the breach of those same obligations." *Proctor & Schwartz, supra* at 15. *See also Kingsley & Keith*, 435 A.2d at 591; *Koenig*, 426 A.2d at 642.

The third part of the test looks to whether the exercise of in personam jurisdiction would be fair and reasonable under the circumstances. The fairness of the exercise of long-arm jurisdiction is judged by due process standards, the test being whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). I believe that the defendants should forsee the possibility of being sued in Pennsylvania when they breach a contract with a Pennsylvania firm which they intend to be performed in Pennsylvania. I therefore conclude that due process per-

---

A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. Contrary to the dissent's suggestion, therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. *See International Ass'n of Machinists & Aero-*

*space Workers v. Northwest Airlines, Inc.*, 673 F.2d 700 (3d Cir.1982). Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

We do not understand Time Share to contend that it was ever denied the opportunity to present whatever evidence it saw fit to adduce before the district court. (Indeed, in its brief, Time Share asserted that there was no dispute as to the facts). Rather, it simply chose to rely on the affidavit described in text as the sole basis for its jurisdictional contentions, and we have found those allegations to be insufficient.

mits a finding that the defendants are amenable to suit in Pennsylvania.

The majority holds that the acts described in plaintiff's affidavit cannot be the basis for long-arm jurisdiction because they constitute mere "unilateral activity" by the plaintiff which coincidentally took place in Pennsylvania, citing *Hanson v. Denkla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). I disagree. The contacts relied on by plaintiff are not its own unilateral activities, but were instead acts constituting actual performance of the contract. Furthermore, plaintiff's performance took place in Pennsylvania by design, not by coincidence. In these respects the facts of this case are closer to those in *Proctor & Schwartz, Kingsley & Keith,* and *Koenig* than to those in *Baron & Co. v. Bank of New Jersey,* 497 F.Supp. 534 (E.D.Pa.1980), on which the majority relies.

The third part of the test also looks to the totality of circumstances to see whether it is fair to expect defendants to appear in a Pennsylvania court. Relevant factors include the state's interest in ensuring that contracts performed in Pennsylvania by Pennsylvanians are not breached, *Kingsley & Keith, supra* at 591, the provision in the contract making Pennsylvania law controlling, *Proctor & Schwartz, supra* at 15; *Erie Press Systems Etc. v. Shultz Steel Co.,* 548 F.Supp. 1215, 1221 (W.D.Pa.1982); and such facts as defendants' sending a private aircraft to Philadelphia to transport potential buyers solicited by plaintiff to Maryland.

Because I believe that plaintiff's allegations, if proved, would have permitted service of process under § 5322(b), I would hold that the district court should not have granted defendant's motion to quash and dismiss based solely on the unproved and conflicting allegations in both sides' affidavits. Instead, the district court should have held an evidentiary hearing to give the parties an opportunity to prove their allegations. *See* 2 Moore's Federal Practice ¶ 4.41–1[3] at 4–469 n. 59.

I do not regard the absence of the contract as critical at this stage of the proceedings. On a motion to quash and dismiss we must accept as true the allegations of the non-moving party. Significantly, defendants have conceded the existence of the contract and have not challenged plaintiff's allegations as to its provisions. If plaintiff failed to present the contract at the evidentiary hearing, defendants would of course be free to make objections based on the best evidence rule. I do not believe, however, that the best evidence rule, or any other rule or statute, provides a basis here to quash or dismiss for failure to include the contract with the pleadings or affidavits or in the appendix on appeal.

I would reverse the order of the district court and remand for an evidentiary hearing.