**SNYDER INTERNATIONAL, INC., Plaintiff,**

v.

**TAP EQUIPMENT CO.,**

v.

**UNIVERSAL MACHINERY CO.**

Civ. A. No. 90–110J.

United States District Court, W.D. Pennsylvania.

July 29, 1991.

Melissa K. Dively, Somerset, Pa., for plaintiff.

Theodore O. Struk, Pittsburgh, Pa., for Tap Equipment Co.

John W. Jordan, IV, Pittsburgh, Pa., for Universal Machinery Co.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

Snyder International, Inc. ("Snyder") has filed this diversity action against Tap Equipment Co. ("Tap") to recover damages for Tap's alleged breach of contract. In 1985, Snyder asked Tap to provide a price quote on eight D318 Caterpillar engines. Snyder claims it specified that it was interested only in engines built of new parts which, it informed Tap, would be supplied to the Turkish Army. (Complaint ¶ 4). Snyder eventually agreed to purchase eight caterpillar D318 engines, assembled from

new parts, from Tap on September 10, 1985. (Complaint ¶ 5; Ex. B).

In May 1987, Snyder sent the engines to the Turkish Army. Upon receipt, the Turkish Army apparently inspected the engines and found that they were not assembled from new parts. Snyder unsuccessfully attempted to resolve the dispute with the Turkish Army, which rejected the engines and returned them to Snyder in July 1988.

In June 1990, Snyder filed this lawsuit against Tap, alleging that Tap breached their contract by supplying nonconforming goods and by breaching its warranty. Tap filed an answer in which it pleaded, *inter alia*, that the engines it supplied conformed to Snyder's order. Tap also filed a third party complaint against Universal Machinery Company, ("Universal") in which Tap claimed that either Universal was solely liable to Snyder or that Tap was entitled to indemnification from Universal in the event that Tap was held liable to Snyder.

The case is now before the Court on Universal's 12(b)(2) motion to dismiss for lack of personal jurisdiction. Universal asserts that this Court cannot assert personal jurisdiction over it because it does not have sufficient contacts with the Commonwealth of Pennsylvania. For the reasons set forth below, the Court will deny the motion.

Universal is incorporated under the laws of the State of Louisiana and operates its sole place of business there. Its primary business consists of rebuilding and selling used Caterpillar engines and power products. In 1986, defendant Tap contacted Universal in an effort to obtain the Caterpillar engines it promised to supply to Snyder. Universal and Tap entered into a contract, which required Universal to disassemble and reassemble eight Caterpillar engines owned by Tap. In the event that any parts did not meet standard specifications, Universal would report these defects to Tap, which would then provide new parts for installation by Universal. The contract further provided that upon the completion of every two engines, Tap would inspect the completed work at Universal's facility in Louisiana. After Tap approved the work, Universal was responsible for shipping the engines as Tap directed. At the time the contract was signed, Universal did not know to what destination the engines would ultimately be shipped.

Universal's personnel are all located in Louisiana and all Universal's work on the engines at issue was completed in Louisiana. After the first two engines were completed and accepted by Tap, Tap directed Universal to ship the engines to Snyder in Jennerstown, Pennsylvania. This was the first time that Universal became aware of the engines' destination. Universal sold no goods in Pennsylvania during 1984, 1985 and 1986. Apart from Universal's shipments to Snyder, Universal sold goods to only one other customer in Pennsylvania during 1987 and 1988, and those goods consisted of only .5% of Universal's gross sales during that time. In 1989, Universal sold goods in Pennsylvania to only a single customer other than Snyder, and those goods consisted of only .02% of Universal's gross sales.

The only question before the Court is whether Universal's contacts with the forum are sufficient to permit this Court to exercise jurisdiction over it. Rule 4(e) of the Federal Rules of Civil Procedure permits this Court to exercise personal jurisdiction over a nonresident defendant to the extent allowed under the law of Pennsylvania. To determine whether this Court may assert jurisdiction over Universal, I must therefore examine the Pennsylvania Long-arm Statute. *See Provident Nat'l Bank v. California Federal Savings & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987); *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 489 (3d Cir.1985). Pennsylvania's long arm statute authorizes the exercise of jurisdiction to the fullest extent allowed by the United States Constitution. *See* 42 Pa.Cons.Stat.Ann. § 5322(b); *Provident Nat'l,* 819 F.2d at 436–437; *Van Buskirk,* 760 F.2d at 490.

Tap "bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Provident Nat'l Bank,* 819 F.2d at 437. Tap may

meet this burden by showing that the particular cause of action arose from Universal's activities within the forum state which would vest the Court with specific jurisdiction, or by demonstrating that Universal has "continuous and systematic" contacts with the forum state, which would vest the Court with general jurisdiction. *Id.*

Tap argues that "the cause of action in this case arises out of Universal's forum related activity." (Tap's Brief at 7). Thus, Tap claims that this Court may exercise personal jurisdiction over Universal pursuant to the doctrine of specific jurisdiction.

Tap relies upon a subsection of Pennsylvania's long arm statute which allows a court to exercise jurisdiction over any party where the cause of action arises from "[t]ransacting any business in this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5322(a)(1). The statute further provides that transacting business includes "[t]he shipping of merchandise directly or indirectly into or through this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5322(a)(1)(iii). Tap thus contends that Universal's delivery of the Caterpillar engines to Snyder in Jennerstown, Pennsylvania, provides the basis for this Court to invoke its specific jurisdiction.

■ However, satisfaction of one provision of the long arm statute alone does not, by itself, allow this Court to exercise jurisdiction over Universal. *Derman v. Wilair Services, Inc.,* 590 A.2d 317, 320 (Pa.Super.1991). Tap must also demonstrate that the exercise of personal jurisdiction comports with constitutional requirements of due process. *Id.* This constitutional requirement is met only if Tap can show that Universal has minimum contacts with the Commonwealth of Pennsylvania.[1] *Van Buskirk,* 760 F.2d at 490.

■ Pursuant to the minimum contacts test, I must focus my analysis on the relationship of the transaction to the forum. *Id.* I must therefore consider whether Universal's contacts with Pennsylvania are such that " '[it] reasonably should antic-ipate being haled into court [here].' " *Van Buskirk,* 760 F.2d at 490, *quoting World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The Third Circuit has enunciated a three prong test for determining whether a defendant actually has minimum contacts with the state. The court must first determine whether the defendant has purposefully availed itself of the privilege of acting within the state, thereby invoking the benefits and protections of the state's laws. Next, the court must consider whether the cause of action arises from defendant's activities within the state. Finally, the court must decide whether the defendant's acts have a sufficiently substantial connection with the state to make the exercise of jurisdiction reasonable. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984).

There is no question that Universal purposefully availed itself of the privilege of doing business in Pennsylvania. Having undertaken to ship goods into Pennsylvania, it was more than foreseeable that the shipment would make its way there. With this knowledge, Universal could reasonably anticipate being haled into court in Pennsylvania.

The next question is more problematic: Did the cause of action arise out of Universal's activities within the state. Strictly speaking, Universal's only activity within Pennsylvania consisted of shipping the engines into the state. The actual cause of the injury, the alleged improper construction of the engines, took place in the state of Louisiana. However, in *Van Buskirk,* the Third Circuit found minimum contacts despite the fact that defendant's only activity in Pennsylvania was the shipment of goods (asbestos) which caused injury within the state. 760 F.2d at 490–91. Thus, by shipping nonconforming goods into Pennsylvania, Universal caused an injury in Pennsylvania which allows this court to exercise jurisdiction over it.

Finally, I must consider whether defendant's actions have a substantial enough

---

1. Tap would be required to show "significantly more than mere minimum contacts to establish general jurisdiction." *Provident National Bank,* 819 F.2d at 437.

connection with the forum to make the exercise of jurisdiction reasonable. Universal shipped the caterpillar engines into Pennsylvania. Thus, it knew it was putting goods into the stream of commerce in this state. Universal cannot now claim that defending a lawsuit in Pennsylvania was beyond the realm of possibility. Universal, however, argues that because it was not aware that the engines were destined for Pennsylvania until after it completed work on the first two engines, its activities within this forum are too limited to allow this Court to exercise jurisdiction.

This argument is not persuasive. Although Universal may have agreed to construct the engines before it was aware that they were destined for Pennsylvania, Universal knowingly shipped the engines into this state once it was directed to do so. Moreover, Universal continued to rebuild and make further shipments once it was aware that the final destination of the engines was in Pennsylvania. Thus, Universal consciously chose to transact business within the commonwealth of Pennsylvania. The connection between Universal's action and the forum is therefore sufficient to make the exercise of this Court's jurisdiction reasonable.

AND NOW, this 29th day of July, 1991 it is hereby

ORDERED, that Universal's motion to dismiss for lack of personal jurisdiction is DENIED.