NATIONAL PRECAST CRYPT
CO., Plaintiff,

v.

DY–CORE OF PENNSYLVANIA, INC.,
& Romani Industries, Inc., Defendants
and Third–Party Plaintiffs,

v.

FIRST CONSTRUCTION CORPORA-
TION, National Concrete Pipe Compa-
ny, John M. Esposito and Adam J.
Pientka, Third–Party Defendants.

Civ. A. No. 91–106J.

United States District Court,
W.D. Pennsylvania.

Feb. 19, 1992.

Dennis L. Veraldi, R. Bruce Carlson, Pittsburgh, Pa., for National Precast Crypt Co.

Robert W. Lambert, Philadelphia, Pa., for Dy–Core and Romani.

Keith E. Roberts, Sr., Wheaton, Ill., Melinda J. Roberts, Pittsburgh, Pa., for First Const. Corp., National Concrete Pipe Co., Esposito and Pientka.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

### I. *Introduction*

Plaintiff National Precast Crypt Co., ("Precast"), an Illinois corporation, brought this contract action against defendants Dy–Core of Pennsylvania, Inc. ("Dy–Core") and Romani Industries, Inc. ("Romani"), both of which are Pennsylvania corporations, pursuant to this court's diversity jurisdiction. Defendants filed an answer and counterclaim along with a third party complaint against First Construction Corporation ("First Construction"), and against its President Adam Pientka individually, and also against National Concrete Pipe Co. (Concrete Pipe), and John Esposito ("Esposito") individually. Esposito is the President of plaintiff Precast. The case is currently before the Court on 12(b)(2) motions brought by Esposito and Concrete Pipe for lack of personal jurisdiction. See Fed. R.Civ.P.12(b)(2). The Court will grant Esposito's motion and will deny Concrete Pipe's motion without prejudice.[1]

### II. *Facts*

Precast is in the business of marketing mausoleum crypts for use in cemeteries across the United States. John Esposito owns a patent protecting both the design of the crypt and certain lifting equipment used in the manufacturing process. Esposito has given Precast a nonexclusive license to exploit this technology. (Defendants' Reply Brief, Ex. C) Precast does not, however, actually manufacture the crypts. Instead, Precast contracts with other entities to manufacture the patented crypts by using the patented equipment.

Once Precast executes a contract, it provides the manufacturing contractor with the forming equipment and the patented lifting apparatus necessary to make the crypts. The contract authorizes the contractor to use this equipment to complete the contract and requires the contractor to return the equipment to Precast upon completion. Once the crypts are completed, Precast sells them to independent installation contractors, who in turn sell and install the crypts in cemeteries across the country.

The complaint alleges that Precast and Romani executed two contracts under which Romani agreed to manufacture a specific number of crypts. Romani denies that the contracts identified a specific number of crypts and alleges that the parties agreed in a subsequent contract that defendant Dy–Core would actually manufacture the crypts instead of Romani. The complaint further alleges that Precast and Dy–Core executed two contracts under which Dy–Core would manufacture a specified number of crypts. Precast had already agreed to sell the crypts in question to third-party defendant First Construction, which was planning to install the crypts in cemeteries in New York, New Jersey and Pennsylvania.

The terms of these contracts were essentially the same. The contracts required defendants to use the patented equipment to manufacture the crypts, and to do so in accordance with the patented design. The contracts further required the defendants to adhere to Precast's production schedule. The parties agreed that although Precast retained ownership of the equipment, Romani would be responsible for the care of the equipment and would return the equipment to Precast upon completion of the crypts.

Count I of Precast's complaint alleges that defendants breached the contracts by delivering defective crypts. Precast contends it incurred substantial expenses to

---

**1.** As will be discussed *infra,* defendants have made out a *prima facie* case of personal jurisdiction over Concrete Pipe. However, I express no opinion herein as to whether the evidence adduced by defendants in responding to the instant motion would be sufficient to meet the graduated burden of proof which will apply at later stages in the development of this case. The parties, of course, may revisit this issue after conducting appropriate discovery. *See Kyle v. Continental Capital Corporation,* 575 F.Supp. 616, 618–621 (E.D.Pa.1983).

retain another manufacturer and seeks damages of $138,444.10. Count II alleges that defendants have wrongfully refused to return the forming equipment and lifting apparatus that Precast allowed them to use to manufacture the crypts. Precast asks this Court to order defendants to return the equipment.

In their counterclaim and third party complaint, defendants allege that third-party defendants, Concrete Pipe, First Construction, Adam Pientka and John Esposito, all of whom are residents of Illinois, were parties to the contracts between Precast and defendants. Defendants allege that Precast and the third-party defendants have wrongfully withheld payments due for the crypts that defendants actually manufactured and for labor costs that defendants incurred in manufacturing the crypts.

Third-party defendants Concrete Pipe and John Esposito filed a 12(b)(2) motion to dismiss, contending that this Court cannot assert personal jurisdiction over them. Concrete Pipe argues that it has had no contact with the Commonwealth of Pennsylvania, and that consequently it is not subject to the jurisdiction of this Court. Esposito contends that this Court cannot assert personal jurisdiction over him in his individual capacity because he has had no contact with Pennsylvania other than that which he has had while acting in his capacity as President of Precast. Those contacts, Esposito argues, cannot be relied upon to subject him individually to the personal jurisdiction of this Court.

This Court is in agreement with Esposito, and for the reasons set forth below, will grant his motion to dismiss. I find, however, that defendants have made a *prima facie* showing, for purposes of this motion, that Concrete Pipe is merely the alter ego of Precast and therefore is subject to this Court's jurisdiction. Its motion to dismiss will therefore be denied.

III. *Analysis*

A.

■ When ruling on a motion for judgment on the pleadings, the Court ordinarily assumes the truth of the allegations of the complaint and views the record in the light most favorable to the plaintiff. However, if the defendant contests the jurisdiction of the Court, " 'the plaintiff bears the burden of demonstrating contacts with the forum sufficient to give the Court *in personam* jurisdiction.' " *Time Share Vacations Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984), *quoting Compagnie des Bauxites de Guinee v. L'Union*, 723 F.2d 357, 362 (3d Cir.1983). In such an instance, the plaintiff "must come forward with sufficient jurisdictional facts by affidavit, depositions or other competent evidence to establish the court's jurisdiction over the defendant." *Bowers v. NETI Technologies, Inc.*, 690 F.Supp. 349, 355 (E.D.Pa.1988); *Time Share*, 735 F.2d at 63, 66–67. The burden on Dy–Core and Romani, then, is to establish "with reasonable particularity" that Concrete Pipe and Esposito have had sufficient contacts with Pennsylvania to support this Court's assertion of jurisdiction over them. *Snyder International, Inc. v. Tap Equipment Co.*, 770 F.Supp. 279, 280 (W.D.Pa.1991), *quoting Provident National Bank v. California Federal Savings and Loan Ass'n*, 819 F.2d 434, 436 (3d Cir.1987).

The question of the quantum of evidence defendants must produce to establish that Esposito and Concrete Pipe have sufficient minimum contacts with the forum to support jurisdiction over them is, in this case, somewhat more complicated than usual. This complexity derives from defendants' theory of jurisdiction, which involves a factual dispute that is enmeshed with one of the ultimate issues in this case, namely, whether this Court should ignore the separate corporate existence of Precast and impute Precast's forum contacts to Esposito as an individual and to Concrete Pipe.

■ The first task before me is to resolve the tension "between two accepted maxims of federal civil procedure." *Kyle v. Continental Capital Corporation, supra* n. 1, 575 F.Supp. at 618. Although a court must accept the plaintiff's allegations as true when ruling on most Rule 12(b) motions, the plaintiff must prove *jurisdic-*

*tional* facts by a preponderance of the evidence. *Kyle,* 575 F.Supp. at 618—619. In the instant case, a finding of jurisdiction turns on the resolution of a substantive issue: whether the corporate veil should be pierced.

The Court of Appeals for the Third Circuit has recognized that although a "12(b)2 motion cannot be treated as one for summary judgment [,] [t]here are situations ... where 'the question of the district court's jurisdiction [is] entwined with the ultimate question on the merits.'" *Patterson by Patterson v. FBI,* 893 F.2d 595, 604 (3d Cir.1990) (citations omitted). Accordingly, the district court "must proceed to a decision which impacts on the merits." *Id.* Obviously, I cannot simply accept defendants' allegation that the separate corporate existences of Precast and Concrete Pipe are merely a sham. However, it would be unfair to require defendants, at this stage, to prove jurisdiction by applying a standard that would be appropriate at a full trial of the issue.

■ In recognition of the procedural and evidentiary difficulties posed by such a situation, one district court in this circuit has adopted "a graduated burden of proof on the issue of jurisdiction against which the sufficiency of a plaintiff's evidence may be measured at various stages in the development of the factual record." *Kyle,* 575 F.Supp. at 619.[2] In cases such as the one *sub judice,* where the factual record consists of only affidavits and pleadings, the party seeking to establish jurisdiction "need simply establish a *prima facie* case of jurisdiction. At this stage, [the] burden [is] satisfied if the documents submitted demonstrate facts sufficient to support a finding of jurisdiction." *Id.* Thus, for the purposes of this motion, Romani and Dy–Core need only establish a *prima facie* case of personal jurisdiction. With these principles in mind, I will now examine whether Romani and Dy–Core have met this burden.

■ As a federal court sitting in diversity, this Court may exercise personal jurisdiction over a nonresident defendant to the extent permitted under Pennsylvania law. *See* Fed.R.Civ.P. 4(e). The Pennsylvania Long Arm Statute specifies certain circumstances under which a court may exercise jurisdiction, 42 Pa.C.S.A. § 5322(a), and allows a court to exercise jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b). This Court's jurisdiction pursuant to that statute, then, is coextensive with the due process clause of the United States Constitution. *Time Share,* 735 F.2d at 63; *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 490 (3d Cir. 1985).

■ The due process clause provides this Court with two separate theories which would support assertion of personal jurisdiction over a party. The Court may invoke its general jurisdiction over a nonresident defendant if the defendant's contacts with the forum are continuous. *See Van Buskirk,* 760 F.2d at 490. Alternatively, if the nonresident defendant is not present in the forum or is not doing business in the forum on a continuing basis, the Court may exercise jurisdiction over him/her if that party has engaged in some activity in the forum which has given rise to the cause of action. *Id.* This is referred to as the Court's specific jurisdiction.

Dy–Core and Romani do not explicitly inform the Court whether they are relying upon this Court's powers of general or specific jurisdiction to compel Concrete Pipe's and Esposito's presence in this action. Their brief, however, generally alleges that both National Concrete and Esposito have had "extensive and continuous contact ... with the forum state." (Defendant's Brief in Response at 5) This language seems to suggest, albeit with something less than total clarity, that Romani and Dy–Core are asserting that Esposito and Concrete Pipe have sufficient contacts

---

**2.** The district court relied upon cases from the Ninth Circuit in articulating this graduated burden of proof. It also noted that the Third Circuit has established a flexible burden of proof for establishing subject matter jurisdiction. *Kyle,* 575 F.Supp. at 619 & n. 1. This case has been cited with approval in cases far too numerous to collect in this footnote.

with the forum to allow this Court to assert personal jurisdiction over them pursuant to the doctrine of general jurisdiction. The record does not support the assertion of general jurisdiction. However, the events that give rise to this lawsuit involve contract obligations that were to be performed in Pennsylvania. Indeed, defendants allege that the lawsuit arises from Esposito's and Concrete Pipe's activities in the forum. I will therefore consider whether defendants have established that Esposito and Concrete Pipe had sufficient minimum contacts to allow this Court to compel their attendance under the doctrine of specific jurisdiction.

### B.

█ I will first consider whether Romani and Dy–Core have produced sufficient evidence to support asserting jurisdiction over Precast's President, John Esposito, in his personal rather than corporate capacity. The evidence in the record indicates that Esposito is a domiciliary of Illinois. It also reveals that he does not, within Pennsylvania: (1) personally own property or real estate; (2) personally maintain bank accounts; (3) transact business in a personal capacity. Thus, Esposito's only contacts with this forum result from the fact that he is the president of Precast.

█ As a general rule, "[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts." *Bowers v. NETI Technologies, Inc.*, 690 F.Supp. at 357. This rule is commonly referred to as the fiduciary shield doctrine. *See Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196 (4th Cir.1989); *Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir.1989); *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18 (2nd Cir.1988); *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir.1984); *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir.1983). Several U.S.

Courts of Appeals have concluded that the rule is a creature of statutory construction rather than a constitutional principle. *Western Contracting Corp.*, 885 F.2d at 1200; *Davis v. Metro Productions*, 885 F.2d at 521; *Columbia Briargate*, 713 F.2d at 1056–1057. As a result, there are several exceptions to the rule.[3]

█ Courts will ignore the fiduciary shield rule in two circumstances, both of which have their roots in substantive legal theories that ignore the general corporate law rule of limited liability. First, a corporate agent may be held personally liable for torts committed in the corporate capacity. *See Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978). Accordingly, if the corporate officer engages in tortious conduct in his/her corporate capacity in the forum, courts will consider this conduct as contact with the forum sufficient to support a finding of personal jurisdiction over the officer in his/her individual capacity. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7 (1st Cir.1990); *Western Contracting Corp. v. Bechtel Corp.*, 885 F.2d 1196; *Hough/Loew Associates, Inc. v. CLX Realty Co.*, 760 F.Supp. 1141 (E.D.Pa. 1991); *Donner v. Tams–Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1234 (E.D.Pa.1979).

█ Second, if the corporate officer is charged with violating a statutory scheme that provides for personal, as well as corporate liability, courts have held that contacts with the forum stemming from corporate actions should be considered when evaluating whether the officer, as an individual, has minimum contacts with the forum which would support the assertion of personal jurisdiction. *See Davis v. Metro Productions, Inc.*, 885 F.2d 515; *Retail Software Services, Inc. v. Lashlee*, 854 F.2d 18.

The complaint against Esposito is purely commercial in nature. It sounds in contract. There is no allegation that Esposito

---

**3.** Interestingly, although the cases are in agreement that the rule is not based upon the requirements of due process, many of the opinions recognize exceptions to the rule because, under the circumstances, personal liability was foreseeable. *See Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *Davis v. Metro Productions, Inc.*, 885 F.2d at 522–523; *Bowers v. NETI Technologies, Inc.*, 690 F.Supp. 349, 358–359 (E.D.Pa.1988).

engaged in tortious behavior or violated a statutory scheme imposing personal liability. Romani and Dy–Core cannot, therefore, rely upon either of these exceptions to the fiduciary shield doctrine's general prohibition against asserting personal jurisdiction over a corporate officer in his/her individual capacity based upon acts performed in a corporate capacity. *See generally* Sponsler, "Jurisdiction Over the Corporate Agent: The Fiduciary Shield," 35 Wash. & Lee L.Rev. 349 (1978).

▆▆▆ Romani and Dy–Core contend that this Court may assert jurisdiction over Esposito personally because plaintiff Precast is merely the alter ego of Esposito. They assert that Esposito has not observed the requisite corporate formalities and therefore cannot rely upon the doctrine of limited liability to avoid the jurisdiction of this Court. In effect, Romani and Dy–Core are asking this Court to pierce the corporate veil and hold Esposito personally liable for the contractual undertakings of Precast. In theory, this is a valid method of obtaining jurisdiction over a corporate agent individually based upon his/her corporate contacts with the forum. *See Savin Corp. v. Heritage Copy Products, Inc.*, 661 F.Supp. 463, 468–471 (M.D.Pa.1987); *PSC Professional Service Group v. AM Digital Systems*, 555 F.Supp. 788, 791 & n. 5 (E.D.Pa. 1983). However, to assert personal jurisdiction over Esposito individually pursuant to this theory, Romani and Dy–Core must demonstrate that Esposito exercised a degree of control over Precast which would lead to the conclusion that Precast was merely the alter ego of Esposito. *See Lucas v. Gulf & Western Industries, Inc.*, 666 F.2d 800, 805–806 (3rd Cir.1981); *Savin Corp.*, 661 F.Supp. at 468. In fact, Romani and Dy–Core must demonstrate that Esposito's control over Precast was so pervasive as to make it foreseeable that he could be haled into court to answer personally for Precast's actions. The record simply does not support such a conclusion.

▆▆▆ Courts will pierce the corporate veil only in exceptional circumstances. *Clemens v. Gerber Scientific*, 1989 WESTLAW 3480 (E.D.Pa.) (O'Neill, J.). The

factors relevant in deciding whether the veil should be pierced are Esposito's control over Precast, his ownership of Precast's stock, a lack of separation of daily operations and facilities, a commingling of funds and the failure to observe corporate formalities. *Clemens, Supra; Savin Corp.*, 661 F.Supp. at 469; *Parker v. Bell Asbestos Mines, Ltd.*, 607 F.Supp. 1397, 1399 (E.D.Pa.1985) (Fullam, Bechtle and Shapiro, J.).

In support of their claim that Precast is merely the alter ego of Esposito, Romani and Dy–Core have proffered only the affidavit of Romani's in house counsel, David Romani, Esq. Romani contends that he was personally involved in the contract negotiations between Precast and defendants. He claims that third party defendant, Adam Pientka, President of third party defendant First Construction, informed him that Pientka and Esposito were "partners" in the marketing of the crypts. Romani further states that Esposito presented himself as "the sole or controlling shareholder" and the President and CEO of both Precast and Concrete Pipe. (Romani Affidavit at ¶¶ 4,5). Romani further alleges that Precast, Concrete Pipe and Esposito all share the same office and fax number. (*Id.* at ¶¶ 7,10). Esposito also appeared at the facilities of Dy–Core to instruct Dy–Core regarding the manufacture and transportation of the crypts. (*Id.* at ¶ 12). Finally, defendants assert in their brief that Esposito held the patents protecting the lifting apparatus and the crypt design, and that there was no formal agreement between Esposito and Precast regarding Precast's right to exploit this technology.

▆▆▆ The Romani affidavit establishes that Esposito owned and controlled Precast. However, the fact that one shareholder controls a closely held corporation is not enough to support piercing the corporate veil. Similarly, the fact that Esposito discussed aspects of contract performance is not persuasive because a corporation can act only through its agents. Nor is it surprising that Esposito himself "shared" the same facilities with Precast. Most chief executive and chief operating officers

are provided with office space by their companies within which to conduct corporate business.

The only assertion in Romani's affidavit that tends to support a finding that Precast is merely the alter ego of Esposito is the contention that there was no agreement between Esposito and Precast regarding Precast's right to exploit Esposito's patents. Esposito contends, however, that he has granted Precast a non-exclusive right to exploit the patented technologies. In support of his assertion, Esposito has proffered a letter agreement between Precast and Concrete Pipe. (Reply Brief, Ex. C). In that document, Esposito asserts that he "developed this pre-cast crypt technology and patent as [his] own personal, proprietary project and not as an agent for National Concrete or any other person." (*Id.* at p. 1).

This document is not, however, the embodiment of a license between Esposito and Precast. Instead, it is an agreement between Precast and Concrete Pipe. Although Esposito contends that Precast uses his patented process pursuant to a nonexclusive license, he has not produced a written agreement evidencing that license. Moreover, in the letter agreement, Esposito states that he incorporated Precast "for the purpose of owning assets and operating the business of manufacture, distribution, and/or erection of concrete burial crypts and mausoleums." Thus, the record suggests that Esposito and Precast may have failed to observe the requisite corporate formalities with regard to use of the patented technology.

Nevertheless, the absence of a written license agreement is not enough to warrant piercing the corporate veil. *See Parker v. Bell Asbestos Mines, Ltd.,* 607 F.Supp. at 1400 ("No one factor alone is dispositive.") Defendants have produced no evidence that

Esposito commingled his personal funds with corporate funds, or that he failed to observe corporate formalities on a regular basis. Accordingly, they have failed to meet their burden of producing evidence that the corporate existence of Precast was merely a sham. *See PSC Professional Service Group,* 555 F.Supp. at 791 n. 5. The Court will therefore not consider the contacts Esposito had with the forum in his capacity as president of Precast in determining whether Esposito is personally subject to the jurisdiction of this Court.

Because this Court has concluded that defendants are relying on the theory of specific jurisdiction, defendants must establish that Esposito had minimum contacts with the forum which gave rise to this litigation. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Defendants cannot meet this burden. They have failed to demonstrate that Esposito had any contacts with the Commonwealth of Pennsylvania other than those he experienced as the president of Precast. Those contacts, because the corporate shield cannot be pierced, do not afford a basis for asserting jurisdiction over Esposito.[4] Accordingly, Esposito has not purposefully availed himself of the privilege of conducting activities in Pennsylvania and the Court cannot assert jurisdiction over him pursuant to the doctrine of specific jurisdiction.

Nor can defendants rely upon the doctrine of general jurisdiction to support their claim that Esposito is amenable to this Court's jurisdiction. A court may rely upon the doctrine of general jurisdiction only if the party maintained continuous and substantial affiliations with the forum. *See Dollar Savings Bank v. First Security Bank of Utah, N.A.,* 746 F.2d 208, 212 (3d Cir.1984). This is much more

---

**4.** Once the Court concluded that defendants failed to demonstrate that the corporate identity was a sham, defendants actually lost any claim to the theory of specific jurisdiction to support their argument that this Court has personal jurisdiction over Esposito individually. A party can only rely on specific jurisdiction if the activities in the forum gave rise to the litigation. The Court has concluded that all of Esposito's

activities in connection with the underlying contract were undertaken in Esposito's capacity as president of Precast. This obviously precludes a finding that Esposito engaged in activities in the forum in a personal capacity that were related to the cause of action. Accordingly, defendants would need to show that Esposito was amenable to this Court's jurisdiction pursuant to the doctrine of general jurisdiction.

than is required to establish minimum contacts. *See Snyder International, Inc. v. Tap Equipment Co.*, 770 F.Supp. 279, 281 n. 1 *quoting Provident National Bank v. California Federal Savings & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir.1987). Esposito has absolutely no personal contacts with the forum. Accordingly, defendants have failed to demonstrate that Esposito has sufficient contact with the forum to be subject to this Court's powers of general jurisdiction.

### C.

▮ I turn finally to defendant Concrete Pipe's motion to dismiss for lack of personal jurisdiction. Concrete Pipe contends that this Court cannot exercise jurisdiction over it because it has no contacts with the forum. Defendants argue, however, that although Concrete Pipe was not a signatory to the contract, it acted as Precast's agent with regard to some issues of performance. Defendants contend that as a result of these actions, Concrete Pipe has minimum contacts with the forum. They further argue that this Court may exercise personal jurisdiction over Concrete Pipe because Concrete Pipe and Precast are under the common control of Esposito.

Defendants perfunctorily assert without explanation that a variety of legal theories support a finding that this Court has personal jurisdiction over Concrete Pipe. They place primary reliance on the single enterprise theories discussed in *American Bell Inc. v. Federation of Telephone Workers of Pennsylvania*, 736 F.2d 879 (3d Cir.1984). The alter ego theory as discussed in *American Bell* is clearly inapposite. It "allows the court to ignore technical differences between two corporations where the second corporation was created merely to avoid the effect of labor laws." 736 F.2d at 889. Similarly, the single enterprise theory was created to allow the enforcement of labor agreements. *Bell*, 736 F.2d at 888. *See also NLRB v. Browning Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117 (3d Cir.1982). Strictly speaking, the theories upon which defendants primarily rely do not govern whether, and by what means, a court may assert personal jurisdiction over a nonresident corporation.

The Court's independent research has revealed a line of cases that allow a court to obtain personal jurisdiction over a nonresident corporation based upon its relationship with a related corporation (*i.e.* parent or subsidiary) that has contacts with the forum. *See Clemens v. Gerber Scientific, Inc.*, 1989 WESTLAW 3480 (E.D.Pa.); *Savin Corp. v. Hervage Copy Products*, 661 F.Supp. 463 (M.D.Pa.1987); *Parker v. Bell Asbestos Mines, Ltd.*, 607 F.Supp. 1397 (E.D.Pa.1985) (Fullam, Bechtle, and Shapiro, J.). All of these cases considered whether a court may exercise personal jurisdiction over a nonresident parent corporation based upon the activities of a resident subsidiary. Although defendants do not characterize the relationship between Precast and Concrete Pipe as a parent-subsidiary relationship, they do argue that the identity of these corporations are sufficiently intertwined to allow this Court to ignore their separate corporate existence and find that Concrete Pipe was a party to the contract and thus subject to the jurisdiction of this Court. I believe that this line of cases provides the Court with the best guidance as to whether Concrete Pipe is subject to the jurisdiction of this Court.

▮ Whether a nonresident corporation is subject to the jurisdiction of a Court because it is the alter ego of another corporation which has minimum contacts with the forum is dependent upon a number of factors. These factors include, but are not limited to: common officers and directors; one corporation's ownership of the stock of the other; one corporation's supervision of the other; consolidation of tax returns and financial records, common use of employees; common use of business equipment and office facilities; common business purposes, and finally, the failure to observe corporate formalities. *See Savin Corp.*, 661 F.Supp. at 469; *Clemens v. Gerber Scientific*, 1989 WESTLAW 3480 (E.D.Pa.). Defendants, as discussed *supra*, have the burden of producing sufficient evidence to

support their claim that this Court can exercise jurisdiction over Concrete Pipe.

Defendants rely primarily upon the Romani affidavit to meet this burden. Several of the allegations of Romani's affidavit support a finding that Precast and Concrete Pipe are merely alter egos of each other. For example, Romani alleges that Esposito is the sole shareholder and president of both Precast and Concrete Pipe. Thus, both companies are apparently controlled by Esposito. Both companies also share office and communications facilities. Moreover, the corporations operate in complementary businesses. In fact, the Romani affidavit alleges that Concrete Pipe sent Dy–Core correspondence regarding the manufacturing specifications. The Romani affidavit also alleges that Concrete Pipe made transportation arrangements. Finally, it appears that there was some commingling of financial obligations of the corporations. Although Concrete Pipe was not a signatory of the contract between Precast and defendant, the Romani affidavit alleges that Concrete Pipe reimbursed Dy–Core for the cost of some raw materials. Thus, there does appear to be, *prima facie*, a significant commonality in the ownership, control, supervision, business purpose, operations and finances of the two companies.

Concrete Pipe does not deny the material allegations of the Romani affidavit, but instead attacks the persuasiveness of defendants' legal theories. Although the Court did not find defendants' brief to be much more than a summary incantation of several legal theories, the Romani affidavit establishes a sufficient factual basis for concluding, *prima facie*, that Concrete Pipe and Precast have failed to maintain distinct corporate identities. Accordingly, this Court may, for purposes of the instant motion, impute Precast's contact with the forum to Concrete Pipe to determine whether Concrete Pipe is subject to the jurisdiction of this Court.

### D.

The only question remaining is whether Concrete Pipe has sufficient contacts with the forum to allow this Court to exercise jurisdiction over it. The instant cause of action arises out of Concrete Pipe's forum related activity and this Court may therefore, assuming minimum contacts, assert jurisdiction pursuant to the doctrine of specific jurisdiction. Defendants' burden, then, is to demonstrate that Concrete Pipe has such minimum contacts with the Commonwealth of Pennsylvania that "[it] reasonably should anticipate being haled into court [here]." *Snyder International, Inc. v. Tap Equipment,* 770 F.Supp. at 281 (citations omitted).

To determine whether Concrete Pipe has minimum contacts with the forum, I must consider three factors. First, has Concrete Pipe purposefully availed itself of the privilege of acting in the Commonwealth, thereby invoking the benefits and protections of its laws? Second, does the cause of action arise from Concrete Pipe's forum related activities? Finally, do Concrete Pipe's actions have a sufficiently substantial connection with the forum to make the exercise of jurisdiction reasonable? *Time Share Vacation Club v. Atlantic Resorts, supra,* 735 F.2d at 63.

I begin my analysis by considering the second question. It cannot be disputed that the cause of action arises out of the forum related activities of Concrete Pipe and its alleged alter ego, Precast. Precast executed contracts with defendants, who are citizens of Pennsylvania, with the specific understanding that the work would be done in Pennsylvania. Precast thereby became obligated to perform under several contracts involving a substantial amount of money.

Moreover, the complaint alleges that the Pennsylvania defendants breached the contract by supplying defective crypts. Significantly, Concrete Pipe itself sent correspondence to the Pennsylvania defendants regarding manufacturing specifications. Concrete Pipe also reimbursed defendants for the cost of raw materials. I therefore conclude that Concrete Pipe itself engaged in forum related activities, independent of activities nominally undertaken by Precast, that are related to the cause of action.

It is necessary, however, to impute Precast's activities to Concrete Pipe for me to conclude that Concrete Pipe purposely availed itself of the privilege of acting within the Commonwealth. Although Concrete Pipe sent defendants correspondence and reimbursed defendants for the cost of raw materials, these activities, by themselves, are not substantial enough to invoke the benefits and protections of the laws of Pennsylvania. *See Time Share Vacation Club*, 735 F.2d at 65–66 n. 7. However, when these activities are viewed in conjunction with the contracts executed in Precast's name, it is evident that Concrete Pipe purposefully availed itself of the privilege of conducting business in Pennsylvania. Precast executed contracts involving a substantial amount of money with residents of Pennsylvania. It was thus entirely foreseeable that Precast's activities would have an economic impact within the forum. *Time Share Vacation Club*, 735 F.2d at 65–66. As a result, it was also foreseeable that it would be called to defend itself here in the event of a breach. To point out the obvious, Precast eventually filed its lawsuit in this Court.

Finally, I must determine whether Concrete Pipe's "actions have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable." *Snyder International*, 770 F.Supp. at 281–282. Again, I do not believe that the activities undertaken under the name of Concrete Pipe are sufficient, by themselves, to make the exercise of jurisdiction reasonable. However, when the activities are viewed in conjunction with the activities of Precast, it is readily apparent that the exercise of jurisdiction is reasonable. *See Provident National Bank*, 819 F.2d at 437–438.

Precast contracted with two Pennsylvania residents for the manufacture of crypts worth more than $300,000.00. Precast entered into these agreements with the understanding that the work would be done in the Commonwealth of Pennsylvania, and shipped its own equipment here to further that end. Moreover, Concrete Pipe reimbursed defendants for raw materials that were used in Pennsylvania and sent correspondence to the Pennsylvania residents regarding the manufacturing specifications. Thus, the acts of Precast and Concrete Pipe were directed at the Commonwealth and residents of the Commonwealth, sufficient to make the exercise of this Court's jurisdiction over Concrete Pipe reasonable.