**ELBECO INCORPORATED, Plaintiff,**

v.

**ESTRELLA de PLATO, CORP., and Maquiladora Textil Estrella De Plata S.A. De C.V., and Morton Katz, and David Katz, and Allan Pollock, Defendants.**

No. CIV.A. 97–1702.

United States District Court, E.D. Pennsylvania.

Dec. 29, 1997.

Joseph L. Turchi, Labrum & Doak, Philadelphia, PA, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

Plaintiff, Elbeco, Incorporated ("Elbeco" or "Plaintiff") filed this lawsuit against defendants, Estrella de Plata, Corp. ("Estrella"), Maquiladora Textil Estrella De Plata S.A. De C.V. ("Maquiladora"), Morton Katz, David Katz, and Allan Pollock, alleging three counts. Count I alleges that defendants, Estrella and Maquiladora, breached their contract with Elbeco to timely supply finished first quality goods; Count II alleges that defendants, Estrella and Maquiladora, converted Elbeco's fabric, trim, and material for their own use as they have not returned these items to Elbeco; and Count III alleges that defendants, Morton Katz, David Katz, and Allan Pollock, knowingly misrepresented to Elbeco that Estrella and Maquiladora had the capability to timely meet the contractual obligations and that defendants knew Elbeco would rely upon these representations. Subject matter jurisdiction is proper under 28 U.S.C. § 1332.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction and improper venue pursuant to Rules 12(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Defendants have made an alternative Motion to Transfer this case to the Southern District of Texas, pursuant to 28 U.S.C. § 1406. For the following reasons the Motions are Denied.

## BACKGROUND

Plaintiff, Elbeco, is a Pennsylvania corporation with its corporate offices located in Reading, Pennsylvania and with two factories also located in Pennsylvania. Defendant Estrella is a Texas corporation, and defendant Maquiladora is a Mexican corporation. The individual defendants, Morton Katz, David Katz, and Allan Pollock, are all alleged to be officers, directors, and shareholders of Estrella and Maquiladora. Morton Katz is a resident of Texas. David Katz is a resident

Margaret Sherry Lurio, Douglas M. Lurio, Lurio & Associates, Philadelphia, PA, for Plaintiff.

of North Carolina. Allan Pollock is a resident of Georgia.

Plaintiff has alleged the following facts. In November 1995, Claudia DeLeon, a representative of Estrella and Maquiladora, contacted David Lurio, the Executive Vice President of Elbeco. DeLeon contacted Lurio by telephone at Lurio's office in Reading, Pennsylvania. During the initial phone conversation, DeLeon solicited Elbeco to enter into a contract with Estrella and Maquiladora, which are related companies, whereby Estrella and Maquiladora would serve as subcontractors for Elbeco for the production of shirts to be used as security guard uniforms. Shortly after the phone conversation, DeLeon sent promotional materials concerning Estrella and Maquiladora along with sample shirts to Lurio in Pennsylvania.

Following these communications, the parties entered into a contract whereby Elbeco would provide the fabric, trimmings, and patterns to Estrella, who would cut the fabric, and then Estrella would ship the cut fabric to Maquiladora, who would manufacture the shirts. The completed shirts were to be returned to Elbeco for sale to its customers. Plaintiff alleges that defendants agreed to deliver between 300–350 dozen first quality garments per week and that, prior to contracting, Morton Katz represented to Elbeco that Estrella and Maquiladora had the ability to produce this quantity.

Based on this agreement, Elbeco entered into contracts with its customers for the sale of the shirts. In compliance with the contract, Elbeco sent all materials to Estrella and Maquiladora. However, Estrella and Maquiladora did not send the correct quantity of completed shirts to Elbeco in a timely fashion in accordance with the contract, and many of the shirts that Estrella and Maquiladora sent to Elbeco were allegedly defective. Due to the defects, Elbeco was forced to sell the shirts as second quality rather than first quality garments. This resulted in a financial loss to Elbeco. Moreover, to meet the contracts with their customers, Elbeco was forced to manufacture some of the garments in their own factory in Pennsylvania, which resulted in further financial loss.

To date, Elbeco has not received approximately 10,000 garments that were allegedly in the possession of Estrella and Maquiladora and made for Elbeco according to the contract. Plaintiff alleges that the reason it has not received the 10,000 garments is that defendants sold them to another customer. Following the failure of the contract, the parties entered into an agreement that Estrella and Maquiladora would return to Elbeco all of the uncut fabric and the cut fabric that was not in production. Plaintiff alleges that all of the fabric has not been returned.

## DISCUSSION

### I. Personal Jurisdiction

#### A. Legal Standard

Once a defendant raises a personal jurisdiction defense, the burden of establishing the court's jurisdiction rests with the plaintiff. *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987). Prior to trial, however, a plaintiff need only make a prima facie showing of jurisdiction. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992). Factual disputes created by the affidavits, documents and depositions submitted for the court's consideration are resolved in favor of the non-moving party. *Friedman v. Israel Labour Party,* 957 F.Supp. 701, 706 (E.D.Pa.1997).

Under Federal Rule of Civil Procedure 4(e), we apply Pennsylvania law to determine whether personal jurisdiction is proper. Pennsylvania's long-arm statute, in turn, authorizes both general and specific jurisdiction to the "fullest extent allowed under the Constitution of the United States." 42 Pa. Cons.Stat. Ann. § 5322(b)(Purdon's 1981). Thus, because Pennsylvania's "reach is coextensive with the limits placed on the states by the federal Constitution," *Vetrotex Certainteed Corporation v. Consolidated Fiber Glass Products Company,* 75 F.3d 147, 150 (3d Cir.1996), we apply the familiar two-part test recently summarized by our Court of Appeals as follows:

First, the defendant must have made constitutionally sufficient 'minimum contacts' with the forum. *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The determination of whether minimum contacts exist requires an examination of the 'relationship among the forum, the defendant and the litigation,' *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977), in order to determine whether the defendant has " 'purposefully directed' " its activities towards residents of the forum. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)). There must be 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Second, if 'minimum contacts' are shown, jurisdiction may be exercised where the court determines, in its discretion, that to do so would comport with 'traditional notions of fair play and substantial justice.' *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

*Vetrotex*, 75 F.3d at 150–151. " 'Specific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities' such that the defendant 'should reasonably anticipate being haled into court there.' " *Id.* at 151 (quoting *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir.1990) and *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). However, even where the cause of action does not arise from the defendant's forum related activities, jurisdiction may be based on general jurisdiction where the defendant has maintained "continuous and systematic" contacts with the forum. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984).

## B. Application of Standard to this Case

Elbeco argues that this Court has both general and specific jurisdiction over defendants. We will first consider general and then specific jurisdiction.

### 1. General Jurisdiction

 General jurisdiction is based on "the relationship that the defendant has with the forum state independent of the lawsuit." *Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F.Supp. 1048, 1052 (E.D.Pa.1994). The standard is whether the foreign corporation has "conducted a continued and systematic part of its business in the forum state." *Id. See* 42 Pa. Const. Stat. Ann. § 5301. The Court must review the contacts over a reasonable time to determine whether general jurisdiction existed when the cause of action arose. *Id.* In determining whether general jurisdiction exists, the plaintiff "must show significantly more contacts with the forum state than the mere minimum contacts required for specific jurisdiction." *Id.* at 1051. The contacts must be " 'extensive and pervasive.' " *Fields v. Ramada Inn, Inc.*, 816 F.Supp. 1033, 1036 (E.D.Pa.1993) (citations omitted). General jurisdiction over a foreign corporation will usually be sustained " 'where a non-resident defendant makes a substantial number of direct sales in the forum, solicits business regularly and advertises in a way specifically targeted at the forum market.' " *Romann v. Geissenberger Manufacturing Corp.*, 865 F.Supp. 255, 261 (E.D.Pa.1994) (citing *Modern Mailers*, 844 F.Supp. at 1054 (quoting *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951, 956 (E.D.Pa.1982))).

 Applying this general standard to the instant case, this Court finds that the defendants' contacts with Pennsylvania are not "continuous and systematic" or "extensive and pervasive" and, thus, do not support general jurisdiction. Plaintiff alleges that there are sufficient contacts to maintain general jurisdiction due to the defendants "general business contacts" with Pennsylvania, including those of Ideal, Corp., a related company.[1] However, the only contacts with Pennsylvania that plaintiff has pointed to are

---

1. *Ideal is a corporation that manufactures machinery for use in automated sewing factories. Ideal also solicited business from Elbeco, at-* tempting to sell machinery. Ideal, Estrella, and Maquiladora allegedly have the same owners.

those of Estrella and Maquiladora in association with the contract at issue in this case and the one attempt by Ideal to solicit Elbeco to purchase equipment. Plaintiff has not alleged any other actual corporate contact with Pennsylvania.[2] There is no indication that defendants advertised in Pennsylvania at all outside of the two business deals discussed above, and there is no indication that defendants had contact or did business with any other Pennsylvania resident. *See Modern Mailers, Inc. v. Johnson & Quin, Inc.,* 844 F.Supp. 1048, 1054 (E.D.Pa.1994)(finding no general jurisdiction where defendant corporation did not regularly solicit business in Pennsylvania and where defendant did not specifically target their advertising to Pennsylvania); *Derman v. Wilair Services, Inc.,* 404 Pa.Super. 136, 590 A.2d 317 (1991)(finding no general jurisdiction over corporate defendant who advertised in national publications that circulated in Pennsylvania, received 1.5% of its business from Pennsylvania, and bought .3% of its products from Pennsylvania).

Based on the information provided, defendants' contacts with Pennsylvania fall short of establishing the "systematic and continuous" contacts necessary for the forum to exercise general jurisdiction. Thus, defendants are not subject to the general jurisdiction of this Court.

### 2. Specific Jurisdiction

■ Even though this Court does not have general personal jurisdiction over the defendants, it is still possible to exercise specific jurisdiction over the defendants. Specific jurisdiction may be exercised when the cause of action arises out of the defendants' contacts with the forum. *Mellon Bank (East) PSFS, National Ass'n. v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992); *see* 42 Pa. Cons. Stat. Ann. § 5322(a)(1994). In order to exer-

cise specific jurisdiction, there must be " 'some act by which the defendant purposefully availed itself of the privilege of conducting business in the forum state, thus invoking the benefits and protections of its laws.' " *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). Further, the contacts between the defendant and the forum must be such that " 'he should reasonably anticipate being haled into court there.' " *Id.* (quoting *World–Wide Volkswagen, Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). After analyzing the minimum contacts, the court "may next inquire whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Id.* (quoting *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160). We will first address the minimum contacts of the corporate and individual defendants separately and then the fairness prong for all defendants combined.

### a. Minimum Contacts

### 1. Corporate Defendants

Plaintiff argues that the corporate defendants' contacts with the forum in relationship with this contract are sufficient to exercise specific jurisdiction. We agree. The defendants, Estrella and Maquiladora, purposefully reached into Pennsylvania to solicit Elbeco to enter into a contract. Defendants initiated contact with Elbeco through a phone call into Pennsylvania. Additionally, defendants continued their solicitation of Elbeco through sending promotional materials and sample shirts into Pennsylvania. After the contract was entered into, there was continued contact with Pennsylvania through mail and telephone communications. Further, representatives of Estrella and Maquiladora visited Pennsylvania in connection with this contract on two separate occasions.[3]

---

**2.** Plaintiff also points to defendants' business purpose which is "to manufacture goods on behalf of United States based companies" as further support for exercising general jurisdiction. (Pl.'s Mem. at 6). However, plaintiff has not pointed to any other contacts that defendants have with Pennsylvania in relation to this business purpose.

**3.** The affidavit of David Katz provided by defendants denies that the meetings that occurred in Pennsylvania concerned this specific contract. However, plaintiff submitted the affidavits of David Lurio and Lee Lurio who both maintain that the meeting in Philadelphia, Pennsylvania on June 28, 1996, specifically referenced the problems that had occurred with the contract thus far and that methods to remedy these prob-

■ Although our Court of Appeals has recognized that merely contracting with a resident of the forum alone will not be sufficient to establish specific jurisdiction, they have also recognized that "the requisite contacts may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties." *Mellon Bank*, 960 F.2d at 1223 (citing *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)). For example in *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141 (1992), the Third Circuit determined that there were sufficient contacts to maintain specific jurisdiction over a Louisiana real estate developer where the defendant made telephone calls and sent correspondence into New Jersey from Louisiana and where there was a meeting in New Jersey to facilitate the closing of a loan. *See also Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476 (3d Cir.1993)(finding sufficient contacts for specific jurisdiction where corporate defendant directed twelve communications to the forum, engaged in negotiations that would create rights and obligations in the forum, and initiated contacts with Pennsylvania over the telephone and through the mail); *Mellon Bank (East) PSFS, National Ass'n. v. Farino*, 960 F.2d 1217 (3d Cir.1992); *Mesalic v. Fiberfloat, Corp.*, 897 F.2d 696 (3d Cir.1990); *PPG Industries, Inc. v. Systonetics, Inc.*, 614 F.Supp. 1161 (W.D.Pa.1985); *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951, 960 (E.D.Pa.1982); and *Turrett Steel Corp. v. Manuel International, Inc.*, 612 F.Supp. 387 (W.D.Pa.1985). *But see Vetrotex v. Consolidated Fiber Glass*, 75 F.3d at 152 (finding no specific jurisdiction in part because that was "not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract").

■ The defendants' contacts with Pennsylvania as outlined above indicate a voluntary entry into Pennsylvania sufficient for this Court to exercise specific jurisdiction. Defendants have purposefully availed themselves of the opportunity to do business in Pennsylvania by voluntarily seeking out a Pennsylvania corporation with whom to contract. Thus, defendants were aware that they were contracting with a Pennsylvania corporation and that a breach of the contract would result in economic harm in Pennsylvania. *See PPG Industries*, 614 F.Supp. at 1165. Further, plaintiff's claims arise directly out of these contacts with the forum.

Defendants attempt to argue that their lack of physical presence in Pennsylvania militates against a finding of personal specific jurisdiction. Defendants list the physical contacts they do not have with Pennsylvania, such as not maintaining an office, bank account, or telephone listing, not having agents present in Pennsylvania, and not owning property in Pennsylvania. (Def.'s Mem. at 3). However, "where the defendants have received the benefits and protections of the forum's laws by engaging in business activities with a forum resident, the courts have 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.'" *Mellon Bank*, 960 F.2d at 1225 (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184). Defendants received the benefits and protections of Pennsylvania's laws by exercising their privilege to conduct business activities within Pennsylvania. *See International Shoe*, 326 U.S. at 319, 66 S.Ct. at 160. Therefore, we find that there are sufficient minimum contacts from which the cause of action arises for this Court to exercise specific jurisdiction over the corporate defendants.

### 2. Individual Defendants

Plaintiff alleges that all of the individual defendants, Morton Katz, David Katz, and

lems, including the potential for Elbeco to invest in Estrella and Maquiladora, were discussed. Lurio's affidavit further provides that David Katz visited the Elbeco offices in Reading, Pennsylvania on January 19, 1996, at which time the contract was again discussed. As any "factual discrepancies created by affidavits are generally resolved in favor of the non-moving party," this Court will accept as true for the purposes of this Motion that the meetings did include a discussion of the contract presently at issue. *See Friedman v. Israel Labour Party*, 957 F.Supp. 701, 706 (E.D.Pa.1997).

Allan Pollock, have sufficient minimum contacts for this Court to exercise specific jurisdiction. Plaintiff alleges that these defendants, in their corporate capacities, repeatedly misrepresented to plaintiff that Estrella and Maquiladora had the ability to meet the demands of the contract and that timely deliveries under the contract would be made. Plaintiff further alleges that it relied on these representations in both agreeing to the contractual terms and repeatedly when the contractual obligations were not being met.

 Generally, " '[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts.' " *National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1191 (M.D.Pa.1992)(quoting *Bowers v. NETI Technologies, Inc.*, 690 F.Supp. 349, 357 (E.D.Pa.1988)). *See also Beistle Co. v. Party U.S.A., Inc.*, 914 F.Supp. 92 (M.D.Pa. 1996); *TJS Brokerage & Company, Inc. v. Mahoney*, 940 F.Supp. 784 (E.D.Pa.1996); *Maleski v. D.P. Realty Trust*, 653 A.2d 54 (Pa.Cmwlth.1994). However, a recognized exception to this general rule is that a "corporate agent may be held personally liable for torts committed in their corporate capacity." *National Precast Crypt Co.*, 785 F.Supp. at 1191. The courts recognizing this exception allow personal jurisdiction in such circumstances so the corporate defendant will "not be able to use a corporate shield to protect himself from suit in the forum." *Beistle*, 914 F.Supp. at 96. *See also Maleski*, 653 A.2d at 63 (stating "unless jurisdiction is obtained over those corporate officers engaged in tortious conduct, they will merely repeat the conduct over and over in other corporate guises").

 In order to determine whether the corporate officer will be subject to personal jurisdiction, the following factors should be examined: "the officer's role in the corporate structure, the quality of the officers's contacts, and the extent and nature of the officer's participation in the alleged tortious con-

duct." *Maleski*, 653 A.2d at 63 (citations omitted). *See also TJS Brokerage*, 940 F.Supp. at 789. An analysis of these factors will determine if the defendant's contacts with the forum related to the corporate capacity "may be considered in deciding if he should be subject to personal jurisdiction in an individual capacity." *TJS Brokerage*, 940 F.Supp. at 789. *But see Simkins Corp. v. Gourmet Resources International*, 601 F.Supp. 1336 (E.D.Pa.1985)(finding a corporate officer's contacts in corporate capacity should not be considered in determining whether there are sufficient minimum contacts).

In the instant case, plaintiff has alleged the following corporate role and contacts with the tortious conduct for each individual defendant.[4] Plaintiff has alleged that Morton Katz, as an officer, director, and shareholder of Estrella and Maquiladora, made misrepresentations to Elbeco prior to formation of the contract indicating that the defendant corporations could meet the demands of the contract, made further representations soon after contracting that timely deliveries as required by the contract would be made, made continuing representations to Elbeco from January 1996 until December 1996 that the contractual obligations would be met, and made misrepresentations in person to Elbeco at a meeting in Philadelphia in June 1996 and to an Elbeco representative who visited the corporations in Texas and Mexico in August 1996.

David Katz, an officer, director, and shareholder of Estrella and Maquiladora, is alleged to have made misrepresentations to Elbeco soon after the contract was formed that the contractual obligations would be met, made continuing misrepresentations from January 1996 until December 1996 that the contractual obligations would be met, and made misrepresentations in person at a meeting in Reading, Pennsylvania in January 1996 and again at a meeting in Philadelphia, Pennsylvania in June 1996.

4. Other than those representations made in person, the other contacts were presumably made through telephone and mail communications.

Allan Pollock, an officer, director, and shareholder of Estrella and Maquiladora, is similarly alleged to have made continuing misrepresentations from January 1996 to December 1996 to Elbeco's representatives that the contractual obligations would be met. Further, Pollock is alleged to have made misrepresentations in person to Elbeco's representative visiting the defendant corporations at their sites in Texas and Mexico.

The individual defendants all appear to play a significant role in the corporations, Estrella and Maquiladora, as officers, directors, and shareholders with apparent authority to commit the corporation to contracts and to represent the corporation in contractual discussions and obligations. Further, according to plaintiff's allegations, they appear to have played a significant role in the corporations' tortious conduct. Thus, we will consider their contacts with Pennsylvania in their corporate capacity in determining whether to exercise personal jurisdiction.

■ Under the flexible jurisdictional analysis, we find that the contacts between the individual defendants and Pennsylvania are sufficient minimum contacts to exercise personal jurisdiction. *See Maleski,* 653 A.2d at 63 (noting the "flexible" jurisdictional analysis). All of the individual defendants purposefully directed the alleged misrepresentations to a Pennsylvania corporation. Further, they had an ongoing series of misrepresentations with a Pennsylvania corporation for approximately one year. In making these misrepresentations these defendants purposefully reached into Pennsylvania through telephone and mail communications. Moreover, two of the individual defendants visited Pennsylvania and allegedly made misrepresentations while present in the forum. *See National Precast Crypt,* 785 F.Supp. at 1191 (finding that "if the corporate officer engages in tortious conduct in his/her corporate capacity in the forum, courts will consider this conduct as contact with the forum sufficient to support a finding of personal jurisdiction over the officer in his/her individual capacity"). Plaintiff's cause of action directly arises from these contacts with the forum. Thus, there are sufficient minimum

contacts for this Court to exercise specific jurisdiction over the individual defendants.

### b. Fair Play and Substantial Justice

■ For the second prong of the jurisdictional analysis, which is a determination of whether, once minimum contacts · have been established, the exercise of jurisdiction comports with fair play and substantial justice, we will consider the corporate and individual defendants together. *See International Shoe v. Wash., Off. of Unemploy.,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Court in *Burger King* laid out the following factors to consider in the fairness analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." 471 U.S. at 477, 105 S.Ct. at 2184 (citations omitted). Analysis of these factors is discretionary. *Mellon Bank,* 960 F.2d at 1222. Generally, once the plaintiff makes out a prima facie case in favor of personal jurisdiction, "the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Mellon Bank,* 960 F.2d at 1226 (quoting *Carteret Savings Bank v. Shushan,* 954 F.2d 141, 150 (3d Cir.1992)(quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185)).

■ Defendant has not met this burden in the instant case. To demonstrate the unfairness of personal jurisdiction in Pennsylvania, defendants assert only that none of the defendants reside in Pennsylvania, that there are witnesses not located in Pennsylvania, and that there is demonstrative evidence in Texas and Mexico. (Def.'s Mem. at 11). In asserting such, defendants have not specifically identified any crucial witnesses who are not located in Pennsylvania, much less crucial witnesses who would refuse to come to Pennsylvania to testify. Nor have defendants indicated the substance of the testimony of these witnesses. *See PPG Industries,* 614 F.Supp. at 1164 (discussing necessity of

indicating what the witnesses' testimony will cover in order for Court to balance the unfairness). Defendants have also not alleged the existence of any evidence that could not be brought to Pennsylvania. Further, this is not even a case where all the defendants' reside in the same state, since Estrella is a Texas corporation, Maquiladora is a Mexican corporation, David Katz resides in North Carolina, Morton Katz resides in Texas, and Allan Pollock resides in Georgia. As the Court stated in *Burger King*, "'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a state where he engages in economic activity' [thus] it usually will not be unfair to subject him to the burdens of litigation in another forum for disputes relating to such activity." 471 U.S. at 474, 105 S.Ct. at 2183 (quoting *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)).

Defendants knew they were involved with a Pennsylvania corporation and that the consequences of their actions would have ramifications in Pennsylvania. *See PPG Industries*, 614 F.Supp. at 1165. Further, if the allegations in plaintiff's complaint are proved at trial, defendants will have intentionally caused harm to a Pennsylvania resident through their contacts with Pennsylvania. *See Kubik v. Letteri*, 532 Pa. 10, 614 A.2d 1110, 1116 (1992). When a Pennsylvania resident is injured in the Commonwealth, Pennsylvania has a strong interest in providing a forum for their resident and in having the responsible defendants accountable for their actions in Pennsylvania. *See Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476 (3d Cir.1993).

Accordingly, defendants have not presented this Court with compelling reasons why the exercise of specific jurisdiction would be inconsistent with standards of fair play and notions of substantial justice. There are sufficient minimum contacts to exercise specific jurisdiction and the exercise of specific jurisdiction comports with fair play and substantial justice. Therefore, defendants' Motion to Dismiss for lack of personal jurisdiction is denied.

### III. Venue

Defendants assert that venue in the Eastern District of Pennsylvania is improper because the requirements of 28 U.S.C. § 1391(a) are not met. Plaintiff responds that venue is proper as a substantial part of the events giving rise to the claim occurred in this district and because defendants are subject to personal jurisdiction in this district. Title 28, United States Code, section 1391 provides that:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

Further, 28 U.S.C. § 1391(c) provides that a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." When a state has more than one district, the corporate defendant is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction." *Id.*

It appears that a substantial part of the events giving rise to the claim occurred in this District. Further, this Court has found that all of the defendants had sufficient contacts with this District to be subject to personal jurisdiction. Therefore, we find venue is proper in this District under 28 U.S.C. § 1391. Accordingly, Defendant's Motion to Dismiss for lack of venue is denied.

### IV. Transfer

Defendants have also brought a Motion to Transfer this action to the Southern District of Texas pursuant to 28 U.S.C. § 1406, argu-

ing that the original venue is improper and that the case should, therefore, be dismissed.[5] However, this Court has found that venue is proper in the Eastern District of Pennsylvania as the defendants are subject to personal jurisdiction here and as a substantial part of the events giving rise to the claim occurred here. Presumably, however, venue would be proper in the Southern District of Texas as well since the defendants would be subject to personal jurisdiction there given their corporate presence. Therefore, 28 U.S.C. § 1404 is the proper section for analyzing this Motion to Transfer, not § 1406. *See Jumara v. State Farm Insurance Co.,* 55 F.3d 873, 878 (3d Cir.1995)(discussing the difference between a § 1406 and a § 1404 analysis).

Title 28 of the United States Code section 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The district court has broad discretion to transfer an action, but "defendants have the burden of establishing its propriety." *Traynor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa. 1996) (citations omitted). *See also PPG Industries, Inc. v. Systonetics, Inc.,* 614 F.Supp. 1161, 1163 (W.D.Pa.1985). Further, although the decision to transfer is in the court's discretion, transfers should not be liberally granted. *Vipond v. Consolidated Rail Corp.,* 1994 WL 534808, *1 (E.D.Pa.). The transfer is not warranted if the effect is merely to shift the inconvenience from one party to the other. *Id.* at *2 (citing *Kimball v. Schwartz,* 580 F.Supp. 582, 588 (W.D.Pa. 1984)). Finally, "a party's choice of forum should not be lightly disturbed." *PPG Industries,* 614 F.Supp. at 1164.

In making the determination of whether a transfer is proper, the Court should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Jumara v. State Farm*

*Insurance Co.,* 55 F.3d 873, 879 (3d Cir.1995)(citing 15 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER § 3847). Among the factors to be considered are 1) plaintiff's choice of forum; 2) defendant's preference; 3) residence of the parties; 4) convenience to the parties; 5) convenience to witnesses; 6) location of books and records; 7) practical considerations that could make the trial easier, more expeditious, or less expensive; 8) congestion of the possible fora; and 9) local interest in deciding local controversies. *See Id.* at 879–80.

Applying these principles to the instant case, this Court cannot find that defendants have met their burden of showing that transfer of this case to the Southern District of Texas will best serve the interests of convenience and justice. Among the facts supporting this conclusion are that at least two of the three individual defendants live in states other than Texas, making Pennsylvania just as convenient for those defendants. Further, defendants have not identified any witnesses or demonstrative proof that will only be available conveniently in the Southern District of Texas. *See Vipond,* 1994 WL 534808 at *2 (denying motion to transfer, in part, because defendant failed to meet its burden in specifying the key witnesses to be called); *PPG Industries,* 614 F.Supp. at 1164 (finding that defendant should "make the necessary statements concerning what their [the witnesses] testimony will cover or demonstrate the materiality of such evidence such that this Court may properly balance the parties interests").

Pennsylvania has a strong interest in protecting its residents and providing a forum for resolution of their disputes. *See Grand Entertainment Group v. Star Media Sales,* 988 F.2d 476 (3d Cir.1993). These interests have been implicated in this case as a Pennsylvania corporation has been allegedly injured through the acts of another who reached into Pennsylvania to cause this injury. Further, there has been no showing that the Southern District of Texas has a greater

---

5. Defendants have also requested this Court not to exercise jurisdiction based on *forum non conveniens.* This Court denies that request based on the same reasoning that we deny the Motion to Transfer.

interest in resolving this case than the Eastern District of Pennsylvania or that they would be better able to "preserve the rights of the litigants." *See Id.* at 484.

Thus, given the information represented to the Court at this juncture, transferring this case to the Southern District of Texas would only serve to shift the inconvenience from defendants to plaintiff. Accordingly, defendants' Motion to Transfer is denied.

*V. Conclusion*

An appropriate Order follows.

### ORDER

AND NOW, this 29th day of December, 1997, upon consideration of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Venue or in the alternative Motion to Transfer Venue and Plaintiff's Response thereto, it is hereby ORDERED that, for the reasons set forth in the foregoing Memorandum, the Motions are DENIED.