**Michael L. McMULLEN, et al., Plaintiffs,**

v.

**EUROPEAN ADOPTION CONSULTANTS, INC., and Margaret Cole, Defendants.**

**No. CA 99–302**

United States District Court, W.D. Pennsylvania.

Jan. 29, 2001.

Andrew J. Conner, Conner & Riley, Erie, PA, for Plaintiffs.

C. Jay Habas, Marshall, Dennehey, Warner, Coleman & Goggin, Erie, PA, for Defendants.

---

1. The McMullens adopted a second Russian child, Julie McMullen, when they adopted Christopher. Julie's adoption is not a factor in this litigation.

## OPINION

COHILL, District Judge.

Plaintiffs Michael L. and Susan K. McMullen ("the McMullens") allege breach of contract and related tort claims arising out of their adoption of a Russian child, Christopher McMullen.[1] Christopher was adopted through defendant adoption agency European Adoption Consultants, Inc. ("EAC"). The McMullens reside in Franklin, Pennsylvania. EAC, a licensed adoption agency, is an Ohio corporation with its principal place of business in North Royalton, Ohio. Defendant Margaret Cole is the executive director, president, and a trustee of EAC, and is a resident of Ohio. This action was removed to federal court pursuant to 28 U.S.C. § 1446(d). We have diversity jurisdiction over the defendants under 28 U.S.C. § 1332, and our personal jurisdiction over EAC is not in dispute.

Before the Court is Margaret Cole's revised motion to dismiss the claims against her for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) (Doc. 41). We permitted a period of limited jurisdictional discovery, after which the plaintiffs filed a brief in opposition to defendant's motion and an appendix of exhibits which includes the affidavit of Susan McMullen. Cole has filed a reply brief in support of her motion to dismiss.

Plaintiffs have filed a motion requesting that, if we find that Cole is not subject to the jurisdiction of this Court, we transfer the claims against her to the Northern District of Ohio, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) (Doc. 45).

For the reasons set forth below, we find that we have personal jurisdiction over the defendant, and will deny her motion to dismiss. Plaintiffs' motion to transfer will be denied as moot.

## Background

The following facts, taken from the complaint, set the background for the question of personal jurisdiction over Margaret Cole: the McMullens contacted EAC regarding their international adoption program in July of 1992. Compl. at ¶ 12. During the pre-adoption process, numerous documents were exchanged and telephone calls were made between the McMullens and EAC and Cole. Compl. at ¶¶ 13–15, 19, 22, 24. On October 15, 1992, Cole mailed a contract and other related documents to the McMullens at their home. Compl. at ¶¶ 19, 46. The contract for the adoption stated that EAC would receive all health and biographical information, and would translate these documents and provide them to the family. Compl. at ¶¶ 20, 48. EAC agreed to review all translations. Compl. at ¶¶ 20, 48. On October 16, 1992, Cole telephoned the McMullens and told them that a Russian boy was available for adoption. Compl. at ¶ 22. Cole informed the McMullens that the boy had a cleft lip and palate, but was healthy. Compl. at ¶ 22. Cole provided a photograph of the boy and assured the McMullens that he was healthy. Compl. at ¶ 26. Relying on Cole's representations about the boy's health, the McMullens agreed to adopt the child. Compl. at ¶ 23. The couple traveled to Russia, where they adopted Christopher on October 29, 1992. Compl. at ¶ 31. The adoption was subsequently affirmed and a Certificate of Adoption was issued by the Clerk of the Orphan's Court of Venango County, Pennsylvania. Compl. at ¶ 32.

Christopher began experiencing excessive drooling and sleeplessness in the winter of 1998. Compl. at ¶ 34. When the McMullens had the boy's original medical records translated by an independent translator, they learned that certain medical information had not been disclosed. Compl. at ¶¶ 35–36. Christopher was diagnosed with Lennox–Gastaut Syndrome in May of 1998. Compl. at ¶ 37. He is mentally retarded, uses a walker to assist in ambulating, requires diapers, and is unable to speak. Compl. at ¶ 38. His medical prognosis is poor, and he will require institutionalized living in the future. Compl. at ¶¶ 38–39.

## Applicable Standard for Determining Personal Jurisdiction

### A.

■ A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(e); *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992). Under Pennsylvania's long-arm statute, we may assert personal jurisdiction over a non-resident defendant for "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth." 42 Pa.C.S.A. § 5322(a)(4). This is commonly known as the statute's "tort out/harm in" provision. Courts may exercise personal jurisdiction over non-resident defendants "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984)).

### B.

■ Courts must resolve the question of personal jurisdiction "based on the circumstances that the particular case presents." *Brooks v. Bacardi Rum Corp.*, 943 F.Supp. 559, 562 (E.D.Pa.1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Due process, then, is an individualized inquiry. *Mellon Bank*, 960 F.2d at 1224–25. Consistent with the requirements of due process, we must ensure that a defendant is subjected to personal juris-

diction only where her activities have been purposefully directed at residents of the forum, or otherwise availed herself of the privilege of conducting activities there. *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174; *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ The due process inquiry turns on the defendant's contacts with the forum state. Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction applies. General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. Due process for general personal jurisdiction requires a showing that the defendant has had continuous and systematic contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412–13, 414 nn. 8 & 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The parties do not contend that there is any basis for general jurisdiction in this case.

■ Specific jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Mellon Bank*, 960 F.2d at 1221. Specific personal jurisdiction comports with due process as long as the defendant has sufficient minimum contacts with the forum state. The due process inquiry must focus on "the relationship among the defendant, the forum, and the litigation." *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) (*quoting Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). It has long been recognized that minimum contacts exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. 1228. Put another way, when a defendant's conduct is such that she reasonably should have foreseen being haled into court in the forum, the necessary minimum contacts have been shown. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174.

■ It is the plaintiff's burden to demonstrate that the defendant has minimum contacts with the forum. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (*quoting Compagnie des Bauxites de Guinee v. L'Union*, 723 F.2d 357 (3d Cir.1983)). To meet this burden, plaintiffs "must come forward with sufficient jurisdictional facts by affidavit, depositions or other competent evidence to establish the court's jurisdiction over the defendant." *National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.*, 785 F.Supp. 1186, 1189 (W.D.Pa.1992). "[F]actual discrepancies created by affidavits are generally resolved in favor of the non-moving party." *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F.Supp. 669, 674 n. 3 (E.D.Pa.1997).

## C.

■ If a defendant has sufficient minimum contacts with the forum state, the court may further consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (quoting *International Shoe v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Although this determination is discretionary, courts in this circuit "have generally chosen to engage in this second tier of analysis in determining questions of personal jurisdiction." *Pennzoil Prods. Co. v. Colelli & Assoc.*, 149 F.3d 197, 201 (3d Cir.1998). Factors to be considered include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial

system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559).

■ At this point it becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entertainment*, 988 F.2d at 483 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174).

## Analysis

### A.

■ The Pennsylvania long-arm statute extends jurisdiction to a defendant causing harm or tortious injury in the Commonwealth by an act or omission outside the state. 42 Pa.C.S.A. § 5322(a)(4). The McMullens' complaint alleges breach of contract, along with counts alleging intentional misrepresentation and fraud with respect to Christopher's medical history, intentional nondisclosure of that medical history, negligent misrepresentation and negligent nondisclosure of the same information, and intentional infliction of emotional distress. According to the complaint, Ms. Cole's alleged tortious conduct occurred outside of Pennsylvania, and that conduct caused the alleged harm to the McMullens in the forum state, where they and their children reside. We find that the complaint in this matter is encompassed by the statute. Therefore, we may assert personal jurisdiction over this defendant as long as doing so will not offend Cole's constitutional right to due process.

### B.

■ Before considering whether Cole's contacts with the forum satisfy the mini-

mum contacts requirement for due process, we must address her assertion that any contacts she may have had with Pennsylvania were made solely in her corporate capacity. Cole argues that under the "corporate shield" doctrine such contacts may not count toward the contacts necessary for personal jurisdiction over her as an individual.

Plaintiffs contend that Cole's contacts with them were not made in her corporate capacity because they were dealing directly with the defendant herself. Pls.' Br. at 19. This one-on-one contact, however, is not the appropriate jurisdictional test, and plaintiffs have presented no evidence that any of Cole's activities were undertaken in her personal capacity. It is clear to us that she was acting as president and executive director of EAC in all of her contacts with Pennsylvania.

■ As a general rule, '[i]ndividuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts for that state for those acts.' *Elbeco*, 989 F.Supp. at 676 (citing *National Precast Crypt Co. v. Dy–Core of Pennsylvania, Inc.*, 785 F.Supp. 1186 (M.D.Pa.1992)); *Maleski v. DP Realty Trust*, 653 A.2d 54, 62 (Pa.Cmwlth. 1994).

However, many courts recognize an exception to this general rule, and hold that a "corporate agent may be held personally liable for torts committed in their corporate capacity." *Elbeco*, 989 F.Supp. at 676; *Beistle Co. v. Party U.S.A., Inc.*, 914 F.Supp. 92, 96 (M.D.Pa.1996); *Maleski*, 653 A.2d at 63 (and cases cited therein).

■ District court decisions in this jurisdiction show a split of authority on this question, thus enabling both sides here to cite to cases supporting their respective positions. The issue has not been decided by the Court of Appeals for the Third Circuit.[2] Cases imposing the corporate

---

2. Cole's brief acknowledges that courts have split on the corporate shield issue, but she emphasizes that courts within the Western

District of Pennsylvania have never supported plaintiffs' position. Def.'s Br. at 11,14. We note only that the Court of Appeals has not

shield do so to protect officers and directors from being haled into court based solely upon their status within a corporation. *See, e.g. Simkins Corp. v. Gourmet Resources Int'l,* 601 F.Supp. 1336 (E.D.Pa. 1985). Other courts, however, have balanced this concern with "the principle that, in Pennsylvania, corporate officers and directors are liable for the tortious acts the corporation commits under their direction or with their participation." *Maleski,* 653 A.2d at 63 (citing *Al-Khazraji v. St. Francis College,* 784 F.2d 505 (3d Cir.1986)), *aff'd* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Using a case-by-case approach to determine whether corporate contacts should be considered for personal jurisdiction over an officer, these courts analyze the following factors: (1) the officer's role in the corporate structure; (2) the quality of the officer's contacts; and (3) the extent and nature of the officer's participation in the alleged tortious conduct. *Elbeco,* 989 F.Supp. at 676 (citing *Maleski,* 653 A.2d at 63); *Moran v. Metropolitan District Council of Philadelphia,* 640 F.Supp. 430 (E.D.Pa.1986).

We conclude that the latter is the better-reasoned approach and will use it to determine whether the corporate shield protects Cole as an individual from personal jurisdiction. Applying the first prong of the test, Cole testified that she has been the president and executive director of the agency, as well as a trustee, since EAC's incorporation in 1992. Cole Dep., Pls.' App. at 20. The entire staff of the adoption agency reports to her. Cole Dep., Pls.' App. at 31, 34. It is clear that she occupies the most significant role in EAC's corporate structure.

Turning to the nature and quality of her contacts with the forum, the plaintiff has alleged that Cole has the following contacts with Pennsylvania: [3]

decided the question and that district court opinions are merely persuasive authority.

1. Cole placed numerous telephone calls to the McMullens at their residence or places of employment, in Pennsylvania, during the pre-adoption period. S. McMullen Aff. at ¶¶ 11, 13.

2. Cole mailed numerous documents to the McMullens in Pennsylvania in connection with this adoption. S. McMullen Aff. at ¶¶ 6, 17.

3. Cole had mail or telephone contact with the Venango Family Services and Children's Aid Society, located in Oil City, Pennsylvania, which conducted the "home study" required by the Commonwealth of Pennsylvania of all potential adoptive parents. S. McMullen Aff. at ¶ 16; Pls.' App. at 351. This study was performed in January and February of 1992, prior to any contact between the McMullens and EAC. Pls.' App. at 221. Cole personally contacted Janet T. Schwabenbauer, M.A., who had conducted the home study, and arranged to obtain a copy. S. McMullen Aff. at ¶ 9, Pls.' App. at 320–21.

4. Cole sent a letter to the United States Immigration & Naturalization Service ("INS") in Pittsburgh, Pennsylvania, requesting expedited approval of the McMullens' paperwork so that they could travel to Russia for an adoption. S. McMullen Aff. at ¶ 14; Pls.' App. at 218.

5. Cole sent a letter dated October 15, 1992, to the McMullens at their home, informing them that EAC had received the documents necessary to compile their foreign dossier, and enclosing certain other documents for their execution. An EAC contract and fee schedule, signed by Margaret Cole, was one of these documents. Cole Dep. at 96–97; S.

3. Plaintiffs' brief enumerates additional "contacts" which are not relevant to the question of our jurisdiction over this defendant. Pls.' Br. at 26–27.

McMullen Aff. at ¶ 17; Pls.' App. at 259, 260–262;

6. Cole telephoned the plaintiffs at their home on October 16, 1992, and informed them that Christopher was available for adoption in Russia. She advised them that the boy was in good health except for a cleft palate. S. McMullen Aff. at ¶ 18.

7. Cole telephoned the McMullens at their home after they accepted Christopher, directing them to meet her at a hotel near the Newark airport and instructing them to bring certain amounts of money. S. McMullen Aff. at ¶ 17.

8. Cole faxed a copy of Christopher's photograph to Susan McMullen at the Meadville Medical Center, Meadville, Pennsylvania, her place of employment. S. McMullen Aff. at ¶ 21.

9. Cole had post-adoption contact with the McMullens by mail and telephone, and invited them to an EAC gathering in Ohio which was featured in the Ohio press. S. McMullen Aff. at ¶ 29; Pls.' App. at 399–400.

10. The McMullens were EAC's first adoptive family in Pennsylvania. Following their adoption, Cole participated in one of ten informational seminars the corporation held in the Commonwealth for families interested in foreign adoption. That seminar was held in Pittsburgh on May 1, 1999. Cole Dep. Pls.' App. at 69–71.

We find that the nature and quality of Cole's corporate contacts with Pennsylvania weigh in favor of using them to assess individual jurisdiction. Cole was personally involved with many aspects of Christopher's adoption. She had numerous mail and phone contacts with the McMullens; she facilitated the adoption by contacting a Pennsylvania social services agency to obtain the home study required under Pennsylvania law; she contacted the INS in Pittsburgh to request expedited approval of the plaintiffs' paperwork; she signed the contract on behalf of EAC, and mailed it to the McMullens; she personally contacted the family by telephone to tell them that Christopher was available for adoption; she allegedly made a misrepresentation about his medical condition in that telephone call; and she maintained contact with the family following the adoption. These contacts convince us that the second part of the test for denying the protection of the corporate shield is satisfied.

Applying the final prong of the analysis, we find that Cole directly participated in the tortious conduct which is central to the lawsuit, when she allegedly misrepresented Christopher's medical condition to the McMullens. Cole allegedly informed the McMullens that Christopher was available for adoption in Russia, and advised them that the boy was in good health except for a cleft palate. S. McMullen Aff. at ¶ 18.

Therefore, having evaluated the appropriate criteria, we conclude that, although all of Margaret Cole's contacts with the forum were made in her corporate capacity, she is not entitled to the protection of the corporate shield.

## C.

We must now determine whether Cole's contacts with Pennsylvania are sufficient minimum contacts for specific jurisdiction.

Minimum contacts comport with due process as long as the plaintiff shows "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum state." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. The purposeful availment requirement assures that personal jurisdiction will result from the actions of the defendant herself. *Id.* It "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral ac-

tivity of another party or third person." *Id.* (internal citations omitted).

Plaintiffs contend that Cole's activities relating to Christopher's adoption, including making the telephone calls into the forum, sending letters and documents into the forum, contacting the Venango County agency, directly contacting the INS in Pittsburgh, mailing the contract to the McMullens, telephoning the McMullens to offer Christopher for adoption and assuring the plaintiffs that he was in good health, and making subsequent telephone calls to the family after the adoption, satisfies purposeful availment in this case. Pls.' Br. at 25–27.

Cole insists that the plaintiffs have not shown purposeful availment for several reasons. She first argues that the plaintiffs themselves initiated the relationship with the adoption agency. Certainly, it is undisputed that the McMullens first contacted EAC about adopting a foreign child. Compl. at ¶ 12. This fact, however, is not dispositive. *Carteret,* 954 F.2d at 150; *Reliance Steel,* 675 F.2d at 589; *Travelers Indemnity Co. v. TEC America, Inc.,* 909 F.Supp. 249 (M.D.Pa.1995). The record shows that mail and telephone contact flowed in both directions. Once the McMullens contacted the defendant about international adoption, Cole responded with information, necessary forms, fee schedules, letters and phone calls to agencies in Pennsylvania, a contract for adoption, and, ultimately, with a specific child. Defendant's argument that these are merely random, fortuitous, or attenuated contacts, or that this shows nothing but unilateral activity by the McMullens, is belied by the facts of this case.

Cole further contends that there was no purposeful availment because she never entered Pennsylvania in connection with this adoption. The only evidence plaintiffs have produced on this question shows that Cole presented an EAC seminar in Pittsburgh on May 1, 1999, after Christopher's adoption but before the complaint in this action was filed. Cole Dep., Pls.' App. at 69–71.

The fact that a defendant has not been physically present in the forum, however, is not determinative. "Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174 (emphasis in original). As the Third Circuit has emphasized, in *Burger King,* the Supreme Court "deemed the physical presence test outmoded." *North Penn Gas v. Corning Natural Gas,* 897 F.2d 687, 691 (3d Cir.1990). *See also IMO Industries, Inc. v. Kiekert AG.,* 155 F.3d 254, 259 (3d Cir.1998) (physical presence within the forum is not required); *Grand Entertainment,* 988 F.2d at 482 (due process does not require a defendant's physical presence in the forum before personal jurisdiction is exercised); *Mellon Bank,* 960 F.2d at 1225 (when a defendant has received the benefits and protection of the forum's laws by engaging in business activities with a forum resident, the courts have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there). Cole's assertion that we may not extend personal jurisdiction over her because she never entered Pennsylvania in connection with this adoption is simply not supported by the law.

Finally, Cole argues that mail and telephone contacts alone are not sufficient to support personal jurisdiction. This argument, too, must also fail. Cole cites *Lynch v. New Jersey Automobile Full Insurance Underwriting Association,* 762 F.Supp. 101 (E.D.Pa.1991), for this proposition. While *Lynch* does indeed hold that "[t]he placing of telephone calls or the sending of letters into the forum by a party to a contract is not sufficient" for the minimum contacts analysis, the facts upon which this decision was based are highly distinguishable from the instant case. The plaintiff in *Lynch* purchased automobile insurance from the defendant, known as the "JUA", which was a public entity created by the

New Jersey legislature to provide insurance to New Jersey residents. When he bought the insurance, Lynch was a resident of New Jersey. He was involved in an accident in Pennsylvania, filed a claim, and subsequently moved to the Commonwealth. The calls and letters upon which the plaintiff argued that personal jurisdiction over the JUA was proper were letters from the insurer mailed to his new address advising him that his policy was void, and letters from the insurer to his health care providers. The district court concluded that these contacts comprised an insufficient basis for jurisdiction. In the first place, the plaintiff had unilaterally relocated to Pennsylvania. ("Defendant could not have reasonably expected that it could be haled into court in Pennsylvania by communicating with an alleged insured who had relocated there following the accident which was the subject of the communication.") *Id.* at 104. In addition, the fact that the defendant was a legislatively-created entity was deemed significant. ("Pennsylvania courts routinely have refused to exercise jurisdiction over the JUA.") *Id.* at 103.

The affidavits in the case before us show that the McMullens' conduct was not unilateral, and that Cole herself had significant contacts with Pennsylvania while she was facilitating Christopher's adoption.

The *Lynch* court cited *Baron & Company, Inc. v. Bank of New Jersey,* 497 F.Supp. 534 (E.D.Pa.1980), to support its holding, a case upon which Cole also relies. We find *Baron* similarly inapposite. The plaintiff in that case was a Pennsylvania corporation which consulted in mergers, acquisitions, and financing of other corporations and businesses. It filed an action to recover a finder's fee after the sale of a property for which defendant bank, located in New Jersey, was a trustee. The court held that plaintiff's conduct, which consisted of phone calls and documents mailed to

the bank in New Jersey, was "clearly unilateral activity" and could not be the basis for personal jurisdiction. *Id.* at 537. (Defendant is not subjected to jurisdiction in Pennsylvania "unless the defendant has done something to manifest its affiliation with this forum.") *Id.* at 537. Again, we emphasize that the case before us is not one where the plaintiffs' conduct was merely unilateral.

*Lynch* and *Baron* are also distinguishable because they present straightforward breach of contract claims. There are no allegations in those cases that the defendant's breach was a result of tortious conduct on the part of any defendant, or that the plaintiffs acted in reliance on defendant's misrepresentations. We further note that *Baron* was decided well before the Supreme Court's decision in *Burger King.* In that opinion, the Court emphasized that " ... it is an inescapable fact of modern commercial life that 'a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating a need for physical presence within a State in which business is conducted." *Burger King,* 471 U.S. at 476, 105 S.Ct. 2174. We read this to suggest that, under some facts, letters and phone calls between the parties may be a satisfactory basis for the assertion of personal jurisdiction over a non-resident defendant.

We find that Cole engaged in business with residents of the Commonwealth when she offered a foreign child to adoptive parents in Pennsylvania, facilitated that adoption process through numerous phone calls and letters, contacted a Pennsylvania social services agency to obtain a copy of the home study that had been conducted in accordance with Pennsylvania law, and contacted the INS office in Pittsburgh to request expedited approval of the plaintiffs' paperwork.[4] We find

4. The record also shows that Cole has continued to avail herself of the privilege of doing business in the forum. Although the McMullen adoptions were EAC's first in Pennsylvania, others have followed. Cole Dep. Pls.' App. at 144–48. Cole personally participated

that by these actions Cole purposefully availed herself of the privilege of doing business in the Commonwealth, and therefore should not be surprised to be haled into court here.

### D.

 We conclude that the plaintiffs have established that Cole has sufficient minimum contacts with Pennsylvania to support our assertion of personal jurisdiction over her as an individual. It remains for us to determine whether this jurisdiction comports with fair play and substantial justice under the factors enumerated in *Burger King* and *World Wide Volkswagen.* These include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559). This determination is made at the Court's discretion. *Pennzoil,* 149 F.3d at 201.

Addressing this point, Cole's brief insists that "[o]nce again, Plaintiffs have simply failed· to carry their burden." Def.'s Br. at 15. However, it is well settled that plaintiffs have no such burden. At this stage in the jurisdictional inquiry it becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Grand Entertainment* 988 F.2d at 483 (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

Cole has not met this heavy burden. After arguing that none of the factors favor the plaintiffs, she concludes that "[i]t is simply unreasonable to assert personal

jurisdiction over an individual for corporate activity, which activity, even if *arguendo* it had occurred, occurred outside of Pennsylvania." Def.'s Reply Br. at 18.

We find that the burden of defending this action in the Western District of Pennsylvania is slight, and that the plaintiffs have a significant interest in pursuing their claims where they reside with Christopher, whose adoption is at the heart of this lawsuit. In addition, Cole purposefully placed a child with adoptive parents in the Commonwealth, which has a strong interest in protecting her citizens from the kind of conduct alleged in the complaint. The defendant has not argued that any other state has a stronger interest in this litigation. Accordingly, we hold that it does not offend traditional notions of fair play and substantial justice to require that she defend this action in Pennsylvania.

### Conclusion

Since the plaintiffs have shown that Cole has sufficient minimum contacts with Pennsylvania, and the defendant has failed to meet her burden as to the reasonableness prong of the due process analysis, we find that the exercise of personal jurisdiction over defendant Margaret Cole, under the circumstances presented by this case, satisfies the requirements of due process. Therefore, defendant's revised motion to dismiss (Doc. 41) shall be DENIED. Plaintiffs' motion to transfer (Doc. 45) shall be denied as moot.

An appropriate Order follows.

### ORDER

AND NOW, to-wit, this 29th day of January, 2001, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that defendant Margaret Cole's revised motion to dismiss for lack of personal jur-

---

in an EAC seminar for potential adoptive parents held in Pittsburgh on May 1, 1999. Cole Dep. Pls.' App. at 69–71. Our decision, however, rests upon Cole's contacts with the fo-

rum in connection with the adoption of Christopher McMullen. These contacts are more than sufficient to support the exercise of personal jurisdiction.

isdiction under Fed.R.Civ.P. 12(b)(2) (Doc. 41) be and hereby is DENIED.

IT IS FURTHER ORDERED THAT plaintiffs' motion to transfer (Doc. 45) be and hereby is DENIED AS MOOT.